John **GRABINGER** and Robert Tovar,
Plaintiffs,

v.

James B. **CONLISK**, Richard Sullivan
and Earle Zuelke, Defendants.

No. 70 C 2066.

United States District Court,
N. D. Illinois, E. D.

Dec. 29, 1970.

James G. Demopoulos, Chicago, Ill., for plaintiffs.

Richard L. Curry, Corporation Counsel City of Chicago, Chicago, Ill., for defendants.

## OPINION

WILL, District Judge.

The plaintiffs in this litigation are two police officers who were each suspended for a period of fifteen days without salary by the defendant Conlisk, Superintendent of Police of the City of Chicago, upon the recommendation of the Complaint Review Panel, a disciplinary panel comprised of superior officers of the Chicago Police Department. The plaintiffs, asking for money damages and the expunging from their official records of reference to the disciplinary action, contend that rights guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and protected by 42 U.S.C. §§ 1983, 1985 and 1986 were violated 1) by the defendants' attempt to force plaintiffs to submit, without the presence of an attorney, to a polygraph examination relative to a citizen's complaint of police brutality lodged against them, 2) by the defendants' refusal to allow an attorney to be present at the hearing of the Complaint Review Panel, and 3) by the fact that their suspension was based in part on their refusal to obey the direct order from their superior officer to submit to the polygraph examination without the benefit of counsel. The defendants have moved for summary judgment based upon this Court's alleged lack of jurisdiction over the subject matter and upon the plaintiffs' failure to state a cause of action upon which relief can be granted. For the reasons stated below, we grant the defendants' motion for summary judgment.

The proceedings from which this suit arose involved an investigation being conducted by the Excessive Force Division of the Internal Inspection Division of the Chicago Police Department, which investigation grew out of a complaint lodged against the plaintiffs by a citizen to the effect that he had been struck on the forehead with a blackjack and kicked and beaten by the plaintiff Grabinger and in the presence of the plaintiff Tovar.[1]

On April 8, 1970, during the course of this investigation, plaintiffs were ordered by the defendant Sullivan to submit to a polygraph test without the presence of

---

[1]. The procedures followed in this investigation and its aftermath are outlined by General Order 67–21 of the Chicago Police Department, an internal administrative order that sets forth the procedures to be followed in all disciplinary actions or when complaints have been lodged against department personnel. The gist of this order, as here relevant, is as follows. When a citizen alleges that excessive use of force or any other violation of his civil rights has occurred at the hands of a police officer, the Internal Investigation Division is to conduct an investigation. If, after investigation, the Division believes such action appropriate, it may recommend to the Superintendent of Police certain disciplinary measures. If the recommended action is thirty days suspension or less, the accused may have a hearing before a Complaint Review Panel or may waive such hearing. If the accused waives this right to a hearing, the Internal Investigation Division forwards its report directly to the Superintendent. If the accused requests a hearing, the Panel, consisting of three lieutenants of the Department, meets and conducts the hearing. The cases are presented to the Panel by a Department Advocate. The Panel considers relevant reports, statements and documents, hears the accused if he so wishes, and may order other members of the Department to appear. The Board then makes its own recommendations for disciplinary action, if any, and submits such recommendation to the Superintendent for final action.

an attorney. The plaintiffs contend that they were willing to submit to the examination, but only if it were in the presence of counsel, and refused to take such examination without the presence of counsel.

After the refusal of the plaintiffs to take the polygraph examination, the investigation was completed by the Internal Inspection Division and a recommendation was made to the Superintendent of Police that the plaintiffs be suspended for a period of thirty days. Both plaintiffs refused to accept this recommendation and properly requested a hearing before the Complaint Review Panel. On May 14, 1970, both plaintiffs appeared before the Complaint Review Panel and requested that their attorney be present. Defendant Zuelke, acting as Department Advocate for the hearing, informed the Panel members that whether or not the attorney would be allowed to appear with the plaintiffs would be a matter for the Panel members to decide, but that in his opinion, the only persons that should appear before the Panel would be the department members requesting the Panel hearing (i. e., the plaintiffs).

The full Review Panel concluded that the attorney would not be allowed to be present. A full hearing was then conducted before the Panel, presented by the Department Advocate, in which the investigation file was reviewed, the plaintiffs were afforded an opportunity to make whatever statements they wished to make to the Panel, and were interrogated by the Panel. After closed deliberations, the Panel recommended to the Superintendent of Police, which recommendation he followed, that the plaintiffs be suspended for fifteen days without pay. Part of this decision was based upon the plaintiffs' failure to obey an order to fully cooperate with the investigation, i. e., the order to submit to a polygraph examination without the presence of counsel.

The plaintiffs contend that the actions of the defendant Sullivan in ordering them to take the polygraph test without the presence of counsel, the actions of the Complaint Review Panel in refusing to allow counsel to be present at the hearing, and the actions of the Panel in its basing the recommended suspension partially on the plaintiffs' refusal to take the polygraph examination all violated their rights under the Fifth, Sixth and Fourteenth Amendments and were part of a conspiracy of the defendants to deny plaintiffs the equal protection of the laws. Jurisdiction is allegedly founded on the Federal Civil Rights Act, 42 U.S. C. §§ 1983, 1985 and 1986.

A perusal of the papers presented by the parties in support of and in opposition to the defendants' motion for summary judgment indicates that the issues here presented for resolution have not been clearly delineated. Although their complaint alleges that their Fifth and Sixth Amendment rights have been violated, the plaintiffs do not specifically complain of any denial to them of the protection afforded by the Fifth Amendment against self-incrimination (although they discuss numerous decisions relevant to this issue) and in fact acknowledge in the complaint itself that they were willing to submit fully to the polygraph examination. Although they do not cite any right-to-counsel decisions, the plaintiffs do generally allege that under the Sixth Amendment they are Constitutionally guaranteed the right to have counsel at the polygraph examination and at the hearing of the Complaint Review Panel even though these were clearly not criminal proceedings. The heart of the plaintiffs' complaint apparently rests upon a Fourteenth Amendment claim of a denial of due process in their suspension in that 1) a polygraph examination is so unreliable as to make its use or requirement arbitrary, 2) their suspension for refusing to submit to such examination without the presence of counsel was in itself arbitrary, and 3) the refusal to allow an attorney in the hearing of the Complaint Review Panel was likewise arbitrary (although this latter contention also hints of their contention of a denial of their alleged right to counsel). The plaintiffs frame the issue as whether a

police officer may be compelled to waive his constitutional rights as a condition of continued employment by a public employer. This question, however, presupposes the very issue that presently requires resolution, i. e., whether there has occurred any abrogation of the plaintiffs' constitutional rights.

The specific issues which we must decide, then, are (A) whether this Court possesses jurisdiction over the subject matter; (B) whether the requirement of submission by the plaintiffs to a polygraph examination violated their Fifth Amendment rights against self-incrimination; (C) whether the refusal to allow an attorney to be present during the polygraph examination and the Complaint Review Panel hearing violated the Sixth Amendment guarantee of right to counsel or the Fourteenth Amendment prohibition against lack of due process of law; and (D) whether a suspension of a police officer partially predicated upon his refusal to take a polygraph examination is so arbitrary as to deny fundamental due process.

■ A. The initial issue of jurisdiction is easily resolved. When a claim is alleged to arise under the Constitution or laws of the United States, the federal district court must entertain the suit except when the alleged claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where it is wholly insubstantial and frivolous. A claim must not be dismissed for lack of jurisdiction unless it appears, to a legal certainty, that the claim is wholly insubstantial and frivolous so far as the Constitution and the laws of the United States are concerned. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). A district court has jurisdiction when the right of a plaintiff to recover under his complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another. Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). As plaintiffs' claims are clearly not frivolous, this Court has jurisdiction.

"Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy." Bell v. Hood, *supra*.

■ B. If, as we interpret the complaint, the plaintiffs are suggesting that the requirement of submission to a polygraph examination concerning the alleged charge of police brutality would violate their rights against self-incrimination guaranteed by the Fifth Amendment and made applicable to the states through the Fourteenth Amendment, that issue must be resolved against them. In Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court held that when a policeman is compelled to testify by the threat that if he does not he will be removed from office, the testimony that he gives cannot be used in a subsequent criminal prosecution. Under *Garrity*, then, nothing that the plaintiffs could have stated at the polygraph examination or at the Review Panel hearing in response to even very broad questions, or the fruits of any such statements, could have been used against them in a later criminal proceeding.

■ The plaintiffs' partial reliance on Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) and Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of the City of New York, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) is misguided. In those cases, the Supreme Court held that public employees who refuse to waive their privilege against self-incrimination or to sign a waiver of immunity may not be dismissed from their offices solely for that refusal. In the instant case, no requests were made of the plaintiffs to waive any immunity or their privilege against self-incrimination. Had the plaintiffs made any statements that incriminated them, that evidence and the fruits thereof would, under *Garrity*, have been inadmissible in any criminal proceeding. It is not the law that a public

employer, in the course of a disciplinary hearing into an employee's conduct, may not require an employee to disclose information reasonably related to his fitness for continued employment. The net of *Garrity, Broderick* and *Uniformed Sanitation Men* is that if a public employee refuses to testify as to a matter concerning which his employer is entitled to inquire, he may be discharged for insubordination, but if he does testify his answers may not be used against him in a subsequent criminal proceeding. The plaintiffs, therefore, were not compelled to waive their constitutional right against self-incrimination as a condition to their continued public employment.

C. Although the plaintiffs contend that they were unconstitutionally denied the right to counsel at the polygraph examination and the Review Panel hearing, it is not clear whether they contend that such deprivation violated the Sixth Amendment's guarantee of assistance of counsel as applicable to the states through the Fourteenth Amendment or the Fourteenth Amendment's general guarantee of fundamental due process. If the plaintiffs are contending that the Sixth Amendment affords them protection, they are in error.

■ The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." While it is true that decisions such as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) have expanded the Sixth Amendment's guarantee of right to counsel in criminal and semi-criminal proceedings, all involving the right to liberty, they have no application to matters purely of a civil nature. The disciplinary proceedings here in no manner may be classified as criminal or even quasi-criminal. *Cf.,* Barker v. Hardway, 283 F. Supp. 228 (S.D.W.Va.1968), aff'd 399 F.2d 638 (4th Cir. 1968), cert. denied 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d

217 (1969), where students at a state supported university suspended for their violent misconduct were held not to have a Sixth Amendment right to counsel at a university disciplinary hearing, a civil proceeding; Nickerson v. United States, 391 F.2d 760 (10 Cir. 1968), cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366 (1968), Haven v. United States, 403 F.2d 384 (9 Cir. 1968), cert. dismissed 393 U.S. 1114, 89 S.Ct. 926, 22 L.Ed.2d 120 (1969), where the Sixth Amendment's guarantee of right to counsel was held not to apply to administrative proceedings in the selective service process.

■■ With respect to due process, it is clear, of course, that public employees may not be discharged without due process of law. Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). The issue then becomes one of defining procedural due process in the context of the administrative-disciplinary proceedings here involved. What constitutes due process under any given set of circumstances depends upon the nature of the proceedings involved and the rights, governmental and private, that may possibly be affected by those proceedings. Cafeteria and Restaurant Workers Union Local 473, A.F.L.–C.I.O. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Madera v. Board of Education of City of New York, 386 F.2d 778 (2d Cir. 1967), cert. denied 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968). As the Supreme Court stated in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960):

> " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts * * * Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account."

The defendants urge that the hearing here involved was a "departmental hearing" as opposed to an "administrative hearing", with the requirements of due process being more easily satisfied in the former type of hearing. This kind of semantic simplicity is dangerous. As noted above, what must be considered in determining the contours of due process applicable to the rights of the plaintiffs are the precise nature of the governmental function involved, the nature of the proceedings, and the potential burden on those proceedings of the claimed due process rights.

The Illinois Revised Statutes, Ch. 24, § 10–1–18.1, create a system of police boards for removal of police officers and suspensions of greater than thirty days duration for cause in cities with a population of over 500,000 persons. This statute creates certain procedural requirements which afford a greater amount of protection to an accused policeman than are granted under the form of hearing here involved, which is outlined in the Chicago Police Department General Order 67–21, *supra* note 1.

There is nothing in the Illinois Statutes, however, that limits the power of the Superintendent of Police to suspend a subordinate for a period of time not exceeding thirty days. In addition, Ch. 24, §§ 3–7–3.1 and 3–7–3.2 of the Illinois Revised Statutes empowers police boards and superintendents of police in cities to adopt rules and regulations for the governance of their police departments. Ch. 11–40 of the Municipal Code of Chicago provides that all complaints of citizens regarding the members of the police department shall be investigated promptly and thoroughly and that all reports thereof should be forwarded to the police superintendent. It is under the authority of these statutes and ordinances that General Order 67–21, *supra* note 1,

outlining the disciplinary processes here involved, was promulgated.

The nature of these disciplinary proceedings can have a relatively limited impact on any police officer. The most serious penalty that can be recommended by the Review Panel is suspension for less than thirty-one days.[2] We are thus not presented with a situation where the potential termination of public employment is involved, but rather with a situation where, at most, some mild form of disciplinary action may occur. Also of significance is the Review Panel's nature as an investigative body rather than as an adjudicative body; the Review Panel is not empowered to execute its conclusions but may merely recommend a future course of action to the Superintendent of Police, who must make the final decision.

When looking at the precise nature of the governmental function embodied in these disciplinary proceedings, we acknowledge that the public interest presently involved is of a lesser degree than that in national security cases and/or where the public defense is concerned. *Cf.*, Bailey v. Richardson, 86 U.S. App.D.C. 248, 182 F.2d 46 (1950), aff'd by an equally divided Court, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352 (1951); Cafeteria and Restaurant Workers Union Local 473, A.F.L.-C.I.O. v. McElroy, *supra*. While we do not evaluate the relative importance of an honest municipal police force vis-a-vis the government's interest in national security, we must note that a law enforcement officer is in a peculiar and unusual position of public trust and responsibility, and by virtue thereof, the public body has an important interest in expecting the officer to give frank and honest replies to questions relevant to his fitness to hold public office. Beilan v. Board of Public Education, 357 U.S. 399, 78 S.Ct.

---

2. The Review Panel is also empowered to recommend further investigation, dismissal of the charges, a written reprimand, and charges before the police board if it believes removal or suspension for longer than thirty days is an appropriate response. If charges are in fact brought before the police board, a de novo hearing is had, with the police officer having the full right to counsel.

1317, 2 L.Ed.2d 1414 (1958). As the Supreme Court concluded in Gardner v. Broderick, *supra*:

"(A policeman) is directly, immediately, and entirely responsible to the city or State which is his employer. He owes his entire loyalty to it. He has no other 'client' or principal. He is a trustee of the public interest, bearing the burden of great and total responsibility to his public employer. * * * (T)he policeman is either responsible to the State or to no one." 392 U.S., at 277–278, 88 S.Ct. at 1916.

The high obligation owed by a policeman to his employer and his peculiar position in our society certainly must be taken into account in considering the nature and effect of disciplinary proceedings instituted by the employer.

Another factor to be considered in defining due process in a given situation is the burden that would be placed upon the proceedings involved if the rights that the plaintiffs request were granted. We can think of no realistic reason for the presence of an attorney during a polygraph examination nor do the plaintiffs suggest one. No problem of self-incrimination arises that would require an attorney to be present because of the holding of *Garrity, supra,* which would prohibit the use of any statements given or the fruits thereof in subsequent criminal proceedings.

We acknowledge that benefits would accrue to the plaintiffs or other officers in a similar situation if an attorney were allowed to be present at the Review Panel hearing. However, as discussed above, the proceedings here involved occur whenever there is any alleged infraction of the police regulations. Any recommendation by the Internal Investigation Division of the Chicago Police Department may be appealed as of right by the officer involved to the Complaint Review Panel. Plaintiffs contend they are guaranteed at this hearing the right to counsel, the ability to produce witnesses, and the right to cross-examine. If every officer who appeared before the Panel were to invoke this full panoply of judicial due process, serious impairment of the disciplinary processes of the Chicago Police Department could occur and the granting of such rights might be impractical to carry out.

Plaintiffs cite no decisions for the proposition that due process requires that an attorney be allowed to be present at a proceeding where the maximum punishment is relatively so little. Nor does research reveal any such case. In fact, our research indicates that the cases dealing with comparable administrative proceedings suggest the contrary. *Cf.,* In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957), no due process right to the assistance of counsel at a Fire Marshal's investigatory proceedings; Hannah v. Larche, *supra,* no right under the due process clause to know the specific charges being investigated, to know the identity of the complainants, or to cross-examine witnesses in proceedings before the United States Civil Rights Commission, particularly in light of the fact that the Commission is primarily an investigatory, not an adjudicatory, body; Madera v. Board of Education of City of New York, *supra,* no due process right to the assistance of counsel at guidance conference for pupil suspended from public school for behavioral difficulties; Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir. 1961), cert. denied 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), due process requires notice and some opportunity for a hearing before a student at a tax-supported college can be expelled for misconduct, but does not require a full-dress judicial hearing with the right to cross-examine witnesses; Nason v. Immigration and Naturalization Service, 370 F.2d 865 (2d Cir. 1967), witness not entitled to have a lawyer present at a preliminary interrogation by the Immigration and Naturalization Service even where the witness might become the object of a deportation proceeding; Barker v. Hardway, *supra,* no due process right to assistance of counsel at a hearing to review suspension of students from a state supported university;

Suess v. Pugh, 245 F.Supp. 661 (N.D.W. Va.1965), no due process right to assistance of counsel by a doctor hired on a provisional basis by the Veterans Administration at a hearing on disciplinary charges against him.

■ We conclude that the administrative proceedings in which the plaintiffs were involved did not deny them due process of law. We base our decision on the following factors: (1) the limited nature of the penalty that may be imposed on a police officer under these proceedings; (2) the importance of the governmental function of maintaining proper discipline among police officers and proper enforcement of the Department's regulations; (3) the potential for disruption of these disciplinary procedures if every officer alleged to have been involved in the most minor rule infraction were entitled to counsel and/or to cross-examine witnesses; (4) the fact that the plaintiffs were informed of the nature of the charges against them and were provided with an administrative hearing wherein they were presented an opportunity to present any statements they desired; and (5) the fact that the functions of the Complaint Review Panel are investigatory in nature rather than adjudicatory, with its recommendations sent to the Superintendent of Police for final disposition.

We find that the proceedings here involved satisfied the requirements of the due process clause of the Fourteenth Amendment which "embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings," Hannah v. Larche, *supra*. The plaintiffs have not been denied any aspect of the right to fundamental fair play from their public employer to which they were entitled under the due process clause.

D. The plaintiffs' final contention is that the basing of their suspension partially upon their refusal to submit to the polygraph examination violated their right to fundamental due process. In support of this allegation, they cite several cases and texts discussing the un-reliability of the results from polygraph examinations. We need not decide, however, whether a suspension based in toto or in part upon the results of a polygraph examination is so arbitrary as to violate the due process clause because that factual situation is not before us. We are dealing solely with a situation where the plaintiffs refused to submit to the examination and those refusals, not any results from the test, were used as a partial basis for their suspension.

■ Utilizing the same legal guides for defining the scope of procedural due process as outlined above, we conclude that the mere requirement of submission by a police officer to a polygraph examination during the course of a preliminary investigation concerning complaints about the officer's official conduct does not violate his guarantee to procedural due process. It is conceivable that had the plaintiffs submitted to the examination, the results therefrom would have exonerated them or have been inconclusive and the investigation might have been terminated. We note again that we are not deciding that the use of the test results themselves as the basis for the suspension would constitute due process, but rather are confining our decision solely to the plaintiffs' suspension being predicated in part upon their refusal to cooperate with the investigation into their official conduct. It thus becomes immaterial that the unreliability of the polygraph test has resulted in its almost universal rejection as competent evidence of truthfulness in judicial proceedings. As Mr. Justice Fortas stated in his concurring opinion in Spevack v. Klein, 385 U.S. 511, 519, 87 S.Ct. 625, 630, 17 L.Ed.2d 574 (1966), the companion case to Garrity v. New Jersey, *supra*: "This Court has never held * * that a policeman may not be discharged for refusal in disciplinary proceedings to testify as to his conduct as a police officer."

In Gardner v. Broderick, *supra*, Mr. Justice Fortas, speaking for the Court, stated in dictum in reference to the Fifth

Amendment's privilege against self-incrimination:

> "If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, Garrity v. New Jersey, *supra*, the privilege against self-incrimination would not have been a bar to his dismissal."

The plaintiffs would have us rule that because a polygraph examination necessitates for its purposes broad and often irrelevant questions, such a test goes beyond the narrow range of questions authorized under Gardner v. Broderick, *supra*. It obviously does not follow from that holding, however, that the plaintiffs were denied procedural due process by their being suspended partially for their refusal to submit to the polygraph examination.

We conclude that the plaintiffs have not been compelled to waive any of their constitutional rights as a condition of continued public employment and that defendants' motion for summary judgment must be granted because no factual disputes exist and because the plaintiffs have not presented any claim upon which relief can be granted. An appropriate order will enter.