Charles F. ALLEN, Plaintiff,

v.

CITY OF GREENSBORO, NORTH CAR-OLINA, Paul B. Calhoun, Chief of Police of the City of Greensboro, and John G. Turner, City Manager of the City of Greensboro, Defendants.

No. C-65-G-70.

United States District Court,
M. D. North Carolina,
Greensboro Division.

Feb. 19, 1971.

———◆———

Norman B. Smith, Greensboro, N. C., for plaintiff.

Jesse L. Warren and William I. Thornton, Jr., Greensboro, N. C., for defendants.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

Plaintiff seeks a judgment declaring that the method employed by defendants in demoting plaintiff as a member of the City of Greensboro Police Department denied him procedural due process under the Fourteenth Amendment to the Constitution of the United States, and a permanent injunction requiring defendants to restore him to his former status as a detective in the Youth Division. The facts have been stipulated and the matter presented to the Court for decision on cross-motions for summary judgment.

From the written stipulations and exhibits, the following facts are found:

## FACTS

1. Plaintiff is a citizen and resident of the City of Greensboro, Guilford County, North Carolina.

2. Defendant City of Greensboro is a municipal corporation chartered and existing under the laws of the State of North Carolina.

3. The defendant Paul B. Calhoun is the duly appointed, qualified and acting Chief of Police of the City of Greensboro, and the defendant John G. Turner is the duly appointed, qualified and acting City Manager of the City of Greensboro. As Chief of Police, the defendant Paul B. Calhoun acts under the City Manager, and has the supervision and control, and enforces discipline of the members of the police force of the City of Greensboro. In his capacity as City Manager, the defendant John G. Turner is the administrative head of the City government of the City of Greensboro.

4. Until February 16, 1970, plaintiff was a detective in the Youth Division of the Greensboro Police Force. On February 16, 1970, plaintiff was demoted to Patrolman I, placed in fifth pay step of this grade, and transferred in grade from the Youth Division to the Uniformed Patrol Division, in which latter capacity he has been serving since that time.

5. The Greensboro Police Department, acting through defendant Paul B. Calhoun, and other agents and servants of the defendant City of Greensboro, who at all times material were acting within the course and scope of their employment, caused a General Board of Inquiry to be convened on February 4, 1970, for the purpose of holding a disciplinary hearing on charges against plaintiff. At this hearing, plaintiff was charged with violating Chapter 15 § 3, Article A, of the Departmental Rules and Regulations, which provides as follows:

"CONDUCT UNBECOMING AN OFFICER. No officer shall conduct himself in a manner unbecoming an officer and a gentleman, either on duty or off."

6. Plaintiff desired to be represented by counsel at the hearing, although he never made this desire known to either of the defendants before the hearing, because plaintiff knew of the provisions of the Departmental General Order 69–2, IV.c.2., which provides as follows:

"While the accused officer may have any witness of his choice present testimony at any Hearing, Legal Counsel, personal advisors, members of his family and others are not permitted in the Hearing unless for the purpose of presenting testimony."

The members of the General Board of Inquiry were all ranking officers of the Greensboro Police Department, as provided in II.B. of the Departmental General Order.

7. At the aforesaid hearing, plaintiff pleaded not guilty to the charges. The principal testimony against him consisted of hearsay statements of one Mary Judith Moran. These statements were reported to the Board by one of the police officers of the defendant City of Greensboro, who had investigated plaintiff's case. Miss Moran was not present at the hearing for the purpose of cross-examination or confrontation, but the plaintiff could have called her as a witness had he so desired. Nevertheless plaintiff agreed at the hearing that the

statements of the investigative officer were "basically true."

8. The verdict and recommendation of the Board of Inquiry was that the plaintiff was guilty as charged. The Board recommended that the plaintiff be demoted from detective in the Youth Division to Patrolman I, that he be placed in the fifth pay step of this grade, which amounted to an annual reduction in pay in the amount of $840.00, and that he be transferred in grade from his assignment in the Youth Division to the Uniformed Patrol Division. This recommendation was adopted and ordered effective by the defendant Paul B. Calhoun, Chief of Police. The punishment had the additional effect of making plaintiff ineligible for promotion to the grade of sergeant, a promotion which plaintiff had an excellent opportunity to attain before the hearing.

9. The demotion and transfer in grade imposed on plaintiff was an executive order of the defendant Paul B. Calhoun. On February 23, 1970, plaintiff, together with his attorney, met the defendant John G. Turner, City Manager, to appeal the order of the Chief of Police. The order was upheld. Chief of Police Calhoun and City Manager Turner, in arriving at their decisions, considered the findings and recommendations of the Board of Inquiry, and the arguments and statements of plaintiff. The City Manager also considered the arguments of plaintiff's counsel, who was permitted to accompany him. In his conference with Chief of Police Calhoun and City Manager Turner, the plaintiff made objections to the proceedings before the Board of Inquiry, because of the following constitutional defects:

a. Plaintiff was denied the right of assistance of counsel.

b. Plaintiff was denied the right to confront and cross-examine witnesses against him.

c. The charge against plaintiff, namely, conducing "himself in a manner unbecoming an officer and a gentleman," was vague and overly broad, and

d. There were no written findings of fact and conclusions of law to support the adjudication.

10. Departmental General Order 69–2 provides, in pertinent parts, as follows:

"II.A.1. The General Board of Inquiry, hereinafter referred to as the Board, shall serve as an administrative hearing, review and inquiry board and shall have no disciplinary powers. Upon finding of fact, the Board shall submit, in writing, all findings and recommendations to the Chief of Police for final Departmental Administrative action. The Chief of Police may, at his discretion, approve as submitted, increase or decrease the severity of the disciplinary action recommended, or order a new hearing.

\* \* \* \* \* \*

"III.A.1.b. Disciplinary hearings shall be held for administrative purposes only. Alleged violations of Criminal and Civil laws shall be heard and adjudicated under the due process of law.

\* \* \* \* \* \*

"IX.B. All disciplinary action imposed by the Chief of Police is subject to the approval of the City Manager.

\* \* \* \* \* \*

"IX.B.2. The decision of the City Manager shall be final."

11. Before the General Board of Inquiry convened, there had been an investigation of the alleged misconduct of the plaintiff by other members of the Greensboro Police Force. The result of the investigation was presented by one of the investigating officers. The plaintiff did not desire to make a statement regarding the charges, but offered himself to the Board for interrogation. In response to questions, plaintiff stated that the charges were "basically true," and made statements in explanation of the charges. However, at no time did plaintiff deny any material aspect of his alleged misconduct.

12. The acts of the defendants and their agents and servants are attributable to and chargeable against defendants, and were done under color of statutes, customs and usages of the State of North Carolina. Moreover, said acts were purposeful and intentional.

## DISCUSSION

Generally stated, the issue for determination by this Court is whether the plaintiff was denied procedural due process under the Fourteenth Amendment by the administrative proceedings of the Greensboro Police Department, which resulted in the disciplinary action imposed upon him.

■ With respect to due process, it is well settled that public employees are protected by the Fourteenth Amendment and cannot be discharged without due process of law. Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). The due process problem, however, is one of defining procedural due process and determining its requirements in the context of the administrative disciplinary proceedings here involved. As the Supreme Court observed in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960), " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." Thus, consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the proceedings involved and a balancing of the rights and interests, governmental and private, that may possibly be affected by those proceedings. Hannah v. Larche, Supra; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The supervision and control of the Greensboro police force, and the enforcement of discipline therein, is vested solely in the Chief of Police acting under the authority of the City Manager. City of Greensboro Charter, 1959, c. 1137, s. 4.-31 as amended 1967, c. 74, s. 4. It is under the authority of this charter provision that Departmental General Order 69–2 of the Greensboro Police Department was promulgated, establishing the disciplinary procedure and Board of Inquiry here involved. Significantly, there is no state statute, charter provision, or ordinance which restricts or qualifies the power of the Chief of Police to discipline subordinate police officers. The only appeal from the decision of the Chief of Police is to be found in General Order 69–2, which allows an appeal to the City Manager from all disciplinary action imposed.

The nature of these disciplinary proceedings at the initial hearing stage must now be examined. The duties of the General Board of Inquiry are directed primarily at the investigation, hearing, and review of formal charges or complaints against police personnel for misconduct, violations of departmental rules and regulations, and standard policies and procedures. By express provision, the Board has no disciplinary powers and cannot execute its own findings. It may only recommend a future course of action to the Chief of Police, who, in his own discretion, must make the final decision by approving as submitted, increasing or decreasing the severity of the disciplinary action recommended, or ordering a new hearing. In performing this function, the General Board of Inquiry serves only as an investigative body rather than as an adjudicative body. As was stated in Hannah v. Larche, supra, 363 U.S. at 442, 80 S.Ct. at 1514: "[W]hen governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used."

■ While the private individual interest of the plaintiff in this case could have been affected by the result of the disciplinary procedure utilized, it cannot be found that such an interest outweighs the interest of the City of Greensboro in assuring the public of

proper police protection by competent and properly disciplined policemen. Indeed, the converse is readily apparent. A law enforcement officer is in a peculiar and unusual position of public trust and responsibility, and by virtue thereof, the public body has an important interest in expecting the officer to conduct himself in a manner befitting the purpose for which he was employed. As stated by the Supreme Court in Gardner v. Broderick, 392 U.S. 273, 277–278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968):

> "[A policeman] is directly, immediately, and entirely responsible to the city or State which is his employer. He owes his entire loyalty to it. He has no other 'client' or principal. He is a trustee of the public interest, bearing the burden of great and total responsibility to his public employer. * * * [T]he policeman is either responsible to the State or to no one."

Police officers are the guardians of the peace and security of the community. The efficiency of our entire system of democracy depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Consequently the high obligation owed by a policeman to his employer and the public for whom he serves, and his peculiar position in our society, certainly must be taken into account in considering the nature and effect of disciplinary proceedings instituted by the employer. Grabinger v. Conlisk, 320 F.Supp. 1213 (N.D.Ill., December 29, 1970).

█ In weighing the governmental interest against that of the plaintiff, it is appropriate to consider the burden that would be placed upon the proceedings involved if the rights that plaintiff demands were granted. Undoubtedly, plaintiff or any other officer against whom disciplinary action was instituted would be greatly benefited if they were allowed the assistance of counsel and the opportunity to confront and cross-examine witnesses before a Board of Inquiry hearing, and subsequently given the benefit and favor of formal written findings of fact and conclusions of law. However, if every officer who was summoned to appear before the Board were to invoke this full complement of judicial due process, serious impairment of the disciplinary processes of the Greensboro Police Department would certainly occur.

Turning briefly to plaintiff's specific allegations of constitutional infringement, it is noted that all of his claims predicated on procedural due process are also based on the premise that the disciplinary proceedings under question were judicial or quasi-judicial in nature. As has already been observed, this is not the character of the proceedings under consideration. Furthermore, research reveals that nearly all of the decisions relied upon by the plaintiff are distinguishable in that they involve the revocation of a right or interest conferred by statute or regulated by an agency established by statute. The plaintiff at bar had no statutory or constitutional right to his position, and was not protected by a civil service system. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Under the facts as found by this Court, no decision can be found which grants the broad interpretation of procedural due process that is sought by the plaintiff.

█ Plaintiff's remaining argument, based on substantive due process grounds, rests upon the assertion that the regulation under which he was charged was so vague as to be completely devoid of any definition, specificity, or sufficient guidance to enable police officers to ascertain the proper standard of conduct required of them. While this argument may be valid in other circumstances, under the particular facts of this case it is without merit. Plaintiff's contention is not supported by the decisions he cites, which are clearly distinguishable. The regulation under attack, unlike those in cases relied upon by plaintiff, is not one which leaves the general public uncertain as to the criminal conduct it prohibits, nor is it one which imposes

a "chilling effect" upon the exercise of First Amendment rights to free speech. Instead, the regulation was adopted by the Greensboro Police Department to govern its own internal affairs and protect the integrity and public trust of its employees. The underlying principle of the due process requirement of certainty and definiteness is that no one shall be held responsible for behavior which he could not reasonably understand to be proscribed. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). There can be no doubt but that plaintiff was fully aware that the improper conduct for which he was charged, *and which he admitted* to be "basically true," was such as to be "unbecoming an officer and a gentleman." Nor does plaintiff contend that he suffered from any uncertainty regarding the propriety of his behavior in question.

This Court concludes that the administrative proceedings in which the plaintiff was involved did not deny him due process of law. This decision is based on the following factors: (1) the importance of the governmental function of maintaining proper discipline among police officers and proper enforcement of the Department's regulations; (2) the potential for disruption of these disciplinary procedures if every officer alleged to have been involved in the most minor rule infraction were entitled to counsel and the right to cross-examine witnesses; (3) the fact that the plaintiff was informed of the nature of the charges against him and was provided with an administrative hearing wherein he was afforded an opportunity to present any witnesses or statements he desired; and (4) the fact that the functions of the General Board of Inquiry are investigatory in nature rather than adjudicatory, with its recommendations sent to the Chief of Police for final disposition. Grabinger v. Conlisk, *supra*. The plaintiff has not been denied any aspect of the right to fundamental fair play from his public employer to which he was entitled under the due process clause.

## CONCLUSIONS

1. The Court has jurisdiction of the parties and of the subject matter.

2. The plaintiff is not entitled to the declaratory and injunctive relief sought.

Accordingly, a judgment will be entered dismissing the complaint with prejudice.