Kerry J. BAXLEY, Plaintiff,

v.

CITY OF NORTH CHARLESTON, a Municipal Corporation, and John E. Bourne, Jr., individually and as Mayor, and L. Edward Simmons, individually and as Chief of Police of the City of North Charleston, Defendants.

Civ. A. No. 81-0240-1.

United States District Court,
D. South Carolina,
Charleston Division.

March 11, 1982.

---

Grover C. Seaton, III, Paul & Seaton, Charleston Heights, S. C., for plaintiff.

James E. Gonzales, North Charleston, S. C., for defendants City of North Charleston and John E. Bourne, Jr.

Joseph C. Coleman, Columbia, S. C., for defendant L. Edward Simmons.

## ORDER

HAWKINS, District Judge.

This matter is before the court on defendants' motions for summary judgment filed December 22, 1981 and January 19, 1982, pursuant to Rule 56, Federal Rules of Civil Procedure. A hearing on the motions was held on January 21, 1982. Having considered the arguments of counsel, the extensive briefs and the materials of record, the court concludes that the motions by the defendants should be granted in part and denied in part.

The plaintiff instituted this action pursuant to 42 U.S.C. §§ 1983 and 1985(3)[1] on January 30, 1981, alleging that the methods used by the defendants in terminating his

employment as Chief of Detectives of the North Charleston Police Department had violated his constitutional rights.

The defendants' motions for summary judgment were based on seven separate grounds. Many of the undisputed facts are set forth in the course of this opinion. For purposes of these motions, the court must draw inferences in favor of the plaintiff. The defendants have the burden of showing the absence of any genuine issue of material fact.

1. *The Claimed Violation of the First, Sixth, Thirteenth and Fourteenth Amendment in Discharging Plaintiff for Refusing to Submit to a Polygraph Examination without the Presence of his Attorney.*

Section 1983 provides in relevant part: Every person who, under color of any statute, regulation, custom or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1981).

Thus, in a § 1983 suit, the plaintiff must show that the defendants deprived him of a right secured by the Constitution and laws of the United States; and, secondly, that the defendants acted under color of state law.

Here, Baxley alleges that he was terminated by the defendants from his position on the police force as a result of his refusal to take a polygraph examination without his counsel being present in violation of 42 U.S.C. § 1983. He asserts that the right of counsel is guaranteed him by the fifth, sixth, thirteenth and fourteenth amendments.[2] On or about April 28, 1980, the plaintiff advised the defendants Bourne and

---

1. Although plaintiff did not specify on which subsection of § 1985 he was basing his claim, all parties conceded at the hearing that § 1985(3) was the appropriate subsection on which to base the § 1985 claim.

2. This deprivation alleged by plaintiff is also the basis for his § 1985(3) claim which will be analyzed *infra.*

Simmons of his decision to file and announce for the office of Solicitor of the ninth judicial circuit of South Carolina, a political division which includes the City of North Charleston in its jurisdiction. On April 29, 1980, Baxley formally filed for the office of Solicitor and paid his candidacy fee. Thereafter, on May 5, 1980, Baxley requested two weeks earned annual leave for the period of May 29, 1980, through June 11, 1980, which was immediately prior to the first primary election.

Simmons, after conferring with Bourne, placed Baxley on forced annual leave beginning May 5, 1980, and ordered him to turn in his police identification, his badge, departmental weapon and car, and to return on May 23rd and he would be advised as to any further duties. As a result of that order, Baxley requested a grievance hearing, which was held on May 14, 1980. The hearing was recorded on magnetic tapes, and the tapes were misplaced before a decision was reached as to Baxley's grievance. On May 20, 1980, at approximately 3:10 p. m., Baxley was ordered to report to the police station immediately to submit to a polygraph examination in reference to the missing tapes. The defendants contend that Baxley was advised by Simmons that the investigation was internal and administrative, such that there would be no criminal prosecution of the incident. Baxley's position is that he was informed that the City construed the missing tapes as a crime and that persons involved would be prosecuted. Baxley advised Simmons that he would report after he contacted his attorney. Simmons advised Baxley that he should report to police headquarters no later than 4:00 p. m. that afternoon. It is the defendants' position that Baxley was not entitled to have counsel present during the polygraph examination; however, Simmons waited on Baxley's attorney until 5:30 p. m., at which time he advised Baxley that he had to take the polygraph examination with or without his counsel and that he would be terminated for disobeying a direct order and for insubordination if he continued to refuse to take the examination. Baxley refused to take the polygraph examination without his attorney being present. Upon Baxley's refusal to submit to the polygraph examination, Simmons terminated him from the North Charleston Police Department. The issue before the court is whether Baxley had a constitutional right to refuse to submit to the polygraph examination without his attorney being present.

A police officer is a trustee of the public interest, bearing the burden of great and total responsibility to his public employer. *Gardner v. Broderick*, 392 U.S. 273, 277–78, 88 S.Ct. 1913, 1915–1916, 20 L.Ed.2d 1082 (1968). However, in a line of cases, the United States Supreme Court has delineated some of the constitutional rights of police officers. The Court in *Garrity v. State of New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), after concluding that "policemen, like teachers and lawyers, are not relegated to a watered down version of constitutional rights," *id.* at 500, 87 S.Ct. at 620, held that when a policeman had been compelled to testify by the threat that otherwise he would be removed from office, the testimony he gave could not be used against him in a subsequent prosecution.

In *Gardner*, the Court faced a slightly different issue: "[N]amely, whether a state may discharge an officer for refusing to waive a right that the Constitution guarantees to him." 392 U.S. at 277, 88 S.Ct. at 1915. The *Gardner* Court found that the policeman in that case was wrongfully discharged for refusing to waive his constitutional right of privilege against self-incrimination. In a companion case, *Uniformed Sanitation Men Association v. Commissioner of Sanitation of the City of New York*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968), the Court applied the principles set forth in *Gardner* to public sanitation workers.

> As we stated in *Gardner v. Broderick, supra*, if New York had demanded that petitioner answer questions specifically, directly and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege,

and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake.... Petitioners as public employees are entitled, like all other persons, to the benefit of the Constitution, including the privilege against self-incrimination. *Gardner v. Broderick, supra; Garrity v. State of New Jersey, supra.* Cf. *Murphy v. Waterfront Commission [sic]*, 378 U.S. 52, at 79, 84 S.Ct. 1594, 1607, at 1609, 12 L.Ed.2d 678 (1964). At the same time, petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights.

*Id.* at 284, 88 S.Ct. at 1919.

A study of these cases makes it apparent that the discharge of a police officer for refusing to waive a valid sixth amendment right to counsel would be prohibited in the same manner as a discharge of a police officer for refusal to waive his fifth amendment right.[3]

The sixth amendment provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. Decisions such as *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), have expanded the sixth amendment's guarantee of right to counsel in criminal proceedings.

Based on the evidence, there is indeed a factual dispute as to whether the investigation of the missing tapes was criminal in nature. If this investigation is found to be criminal in nature, then the defendants' actions in terminating plaintiff for refusing to waive a valid sixth amendment right to have counsel present during the polygraph examination would constitute a § 1983 violation.[4] While the extent of protection afforded by the sixth amendment and guaranteed by the fourteenth amendment is ultimately a question of law, it is the function of the jury to find the underlying facts to which this legal standard is ultimately applied. Cf. *Kim v. Coppin State College*, 662 F.2d 1055, 1062 (4th Cir. 1981) (jury's function to determine facts to which the legal standard of protection afforded by the first amendment is applied).

Therefore, as there are material facts in dispute, summary judgment will not be granted on the ground that the discharge of Baxley for refusing to submit to a polygraph examination without his attorney being present is not violative of the fifth, sixth, thirteenth and fourteenth amendments.

**2. Claimed Violations of a Fourteenth Amendment Roth Property or Liberty Interest.**[5]

---

**3.** It is important to note that the focus in both the *Gardner* and *Uniformed Sanitation* decisions was on the limited right to question public employees about their *official acts.* Thus, public employers have the right to discharge public employees for refusal to account for their "performance of their official duties," *Gardner*, 392 U.S. at 278, 88 S.Ct. at 1916, or "performance of their public trust," *Uniformed Sanitation*, 392 U.S. at 285, 88 S.Ct. at 1920, as long as there is no attempt to coerce those employees out of their constitutional rights.

It would be a jury matter as to whether the inquiries concerning the missing tapes were matters specifically, directly and narrowly related to Baxley's official duties.

**4.** In *Grabinger v. Conlisk*, 320 F.Supp. 1213 (N.D.Ill.1970), a case heavily relied on by de-

fendants, the plaintiffs brought a § 1983 action alleging wrongful termination of their employment as police officers due to their refusal to waive their right to presence of counsel during a polygraph test. The *Grabinger* court expressly rejected the idea that plaintiffs were deprived of a sixth amendment right since proceedings were clearly disciplinary in nature. *Id.* at 1218. However, in the present case, the nature of the missing tapes investigation is in factual dispute.

**5.** While defendants' arguments concerning plaintiff's lack of property interest in his employment are scattered throughout the brief, this court places discussion of the property interest issue along with the discussion of plaintiff's liberty interest in ground two of defendants' motion.

■ In order to be accorded the protection of the due process clause, the complaining party must have a liberty or property interest within the meaning of the fourteenth amendment.[6] *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). A property interest exists when one has a legitimate claim of entitlement to a right arising from such sources as state statutes, local ordinances, and employment contracts. *Id.* at 577, 92 S.Ct. at 2709. The question with which this court is confronted in this case is whether there is any such source supporting Baxley's claim to a property interest in continued employment such that deprivation of that interest by termination without due process by defendants would result in a § 1983 violation. It is the ruling of this court that there is not. North Charleston City Ordinance # 14–2.8—Job Tenure Established, provides as follows:

> Nothing contained in this title shall be deemed to confer job tenure upon any City employee, or require discharges to be for cause, as all hiring, discipline and discharge of such employee to be at the will and pleasure of the City of North Charleston.[7]

When hired, a North Charleston employee's term of service remains indefinite. Also, S.C.Code Ann. § 5–9–30(1) (1976) provides as to the strong Mayor form of government:

> The Mayor shall as the Chief Administrative officer of the municipality, be responsible to the Council for the administration of all city affairs placed in his charge by or under Chapters 1–17.
>
> He shall have the following powers and duties:
>
> 1. To appoint and, when he deems it necessary for the good of the municipality, suspend or remove all municipal employees and appointed administra-

tive officers provided for, by or under Chapters 1–17, except as otherwise provided for, by law or personnel rules adopted pursuant to Chapters 1–17. He may authorize any administrative officer who is subject to his direction and supervision to exercise these powers with respect to subordinates in that officer's department, office or agency.[8]

*Id.*

■ As explained in *Bane v. City of Columbia*, 480 F.Supp. 34 (D.S.C.1979), unless this statutory scheme is modified in some way, the state provides only for "at will" employment of city employees. *Id.* at 37. Because Baxley was employed for an indefinite time and was subject to dismissal by the Mayor for the good of the city, he does not have a property interest sufficient to invoke the due process clause. Further, no *Roth* liberty interest appears in this case which would involve procedural due process. A *Roth* liberty interest is defined in the following manner:

> In *Board of Regents v. Roth*, 408 U.S. 564, 573–75 [92 S.Ct. 2701, 2707–2708, 33 L.Ed.2d 548] (1972), the Supreme Court indicated that when a public employer who, in refusing to rehire an employee, makes charges against him that might damage his standing in the community or otherwise imposes a stigma on the employee that forecloses his freedom to take advantage of other employment opportunities, an employee's interest in liberty may be implicated, and he should be granted a hearing to clear his name. This liberty interest was qualified further by the Supreme Court in *Bishop v. Wood*, 426 U.S. 341, 348 [96 S.Ct. 2074, 2079, 48 L.Ed.2d 684] (1976) where the Court noted that when there is no public disclosure of the reasons for discharging a public employee whose job is terminable at the will of the employer, no liberty interest is implicated.

---

6. The fourteenth amendment provides in relevant part that no state shall "deprive any person of life, liberty, or property without due process of law." U.S.Const. amend. XIV.

7. This section expressly negates plaintiff's argument that § 14–2.7 of the City Ordinance

granted him permanent status as an employee with the defendant City.

8. It should be noted that Chapters 1–17 do not include the Uniform County and Municipal Employees Grievance Procedure Act as that Act is found in Title 8 of the South Carolina Code.

*Bunting v. City of Columbia*, 639 F.2d 1090, 1093 (4th Cir. 1981). Based on the record before the court [9] and, indeed, on plaintiff's statement in his brief that he was not interested in a name-clearing hearing, this court finds that no *Roth* liberty interest was violated.

This court is unable to conclude that the plaintiff had a property or liberty interest in employment such that due process was triggered by his termination. Therefore, as a matter of law, defendants are not subject to a § 1983 claim for a violation of plaintiff's constitutional rights stemming from his termination of employment from the North Charleston Police force.

3. *Plaintiff's State Law Claim to a Hearing.*

■ On May 20, 1980, Simmons discharged Baxley for refusing to take the polygraph examination without his attorney being present. Baxley, through counsel, requested a hearing in compliance with S.C. Code § 8–17–10, *et seq.* (1976). Defendant Bourne refused the request for a hearing in accordance with § 8–17–120, but granted a hearing in accordance with North Charleston City Ordinance § 5.2.[10]

On June 2, 1980, in an effort to stop the hearing, Baxley obtained from the Court of Common Pleas for the Ninth Judicial Circuit a Rule to Show Cause why:

[G]rievance procedures involving the City of North Charleston should not follow the guidelines established by the South Carolina Legislature in section 8–17–110 et seq. Code of Laws of South Carolina, 1976.

and,

[A]ny grievance procedure used by the City of North Charleston that is not in conformity with § 8–17–110, *et seq.* should not be declared null and void.

*Baxley v. The City of North Charleston,* # 80–CP–10–1506 (1980).

The circuit judge, in his order of June 10, 1980, found that "the City of North Charleston had, and has no grievance procedure." [11] *Id.* Judge Floyd, by his order, simply struck the invalid ordinance down. He did not require compliance with § 8–17–110; but rather found that "no grievance procedure" had existed at the time of the hearing request. Plaintiff did not appeal Judge Floyd's order, so that decision stands as the law of this case. As no grievance procedure existed, according to the ruling of Judge Floyd, defendant Bourne was under no duty to grant a hearing in compliance with § 8–17–120. *See,* footnote 10, *supra.* Thus, defendants' motion for summary judgment on this issue is granted.

4. *Plaintiff's Claim for Damages and for Attorney's Fees Under 42 U.S.C. § 1988.*

■ Defendants move for summary judgment on the issue of damages and of

9. The defendants filed numerous documents with the court to support their argument that any public disclosure of the reasons for discharge was made by plaintiff.

10. The County and Municipal Employees Grievance Procedure, S.C.Code § 8–17–110, *et seq.* (1976), does not require any county or municipality to adopt a plan for hearing employee grievances, but does require such a plan, if adopted, to conform to the guidelines set forth in the act. Under the guidelines, a committee of three to nine county or municipal employees would hear the grievance. Under the North Charleston Ordinance, the grievances are heard and decided by the Mayor.

11. "I find that the City of North Charleston is not required under State law to enact a grievance procedure to review firing, disciplining, or otherwise dealing with its employees. However, this Court finds that Section 5.2 of the Personnel Policy of the City of North Charleston, City ordinance ratification # 1975–8 sought to establish a grievance procedure. This section fails to conform to the guidelines provided by Section 8–17–110 et seq., *Code of Laws of South Carolina*, 1976, and as such is invalid as a grievance procedure. Such ordinance lacking the characteristics required under Section 8–17–110 et seq., I find that the City of North Charleston had, and has no grievance procedure.

"Therefore, it is:

. . . . .

"ORDERED that Section 5.2 of the Personnel Policy of the City of North Charleston, Ordinance ratification # 1975–8, be declared, and is hereby so declared to have been and is presently invalid."

*Baxley,* # 80–CP–10–1506 (1980).

attorney's fees allowable in the court's discretion under 42 U.S.C. § 1988.[12] They argue simply that plaintiff is not entitled to damages or attorney's fees because he has failed to prevail in his assertion of the denial of any federal rights. As this court finds there is a factual dispute as to whether or not the plaintiff's constitutional rights have been violated by the defendants, summary judgment is not appropriate on this issue.

5. *Defendants Simmons' and Bourne's Qualified Immunity Defense.*

Defendants Simmons and Bourne move for summary judgment on the ground that they are entitled to qualified immunity in that they acted in good faith in a reasonable belief that their actions were constitutional and lawful under both federal and state law.

 Section 1983 is the primary basis for imposing liability upon individual state and local officials for unconstitutional conduct. Officials who are sued in their individual capacity can be shielded in whole or in part from § 1983 liability through absolute or qualified immunity. The general rule of qualified immunity was first articulated in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based.

416 U.S. at 247, 94 S.Ct. at 1691. In order to qualify for the protection of qualified immunity, the state officer must demonstrate both a good faith belief and reasonable grounds for the belief that his actions were proper in light of the circumstances. In addition, it must be shown that the officer acted within the course of "official con-

duct." *Id.* at 248, 94 S.Ct. at 1692. The reasonableness requirement was clarified soon after *Scheuer* in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), which held that an official would be responsible if he knew or reasonably should have known "that his action would cause an unconstitutional deprivation of the right of another." 420 U.S. at 322, 95 S.Ct. at 1000. The requirement of both a subjective good faith and an objective reasonable belief makes an official liable under § 1983 when he acts with personal malice or is negligent.[13]

Thus, it is clear that Simmons and Bourne are entitled to raise the defense of qualified immunity from personal monetary liability as individuals. *See, Owen v. City of Independence*, 445 U.S. 622, 662, 100 S.Ct. 1398, 1421, 63 L.Ed.2d 673 (1980); *Paxman v. Campbell*, 612 F.2d 848 (4th Cir. 1980).

It is undisputed that the City of North Charleston is a properly named defendant in this action. In 1978, the Supreme Court held in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) that "[l]ocal governing bodies ... can be sued directly under 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035.

Plaintiff's contention that the City of North Charleston participated in plaintiff's alleged constitutional deprivation is supported by the Fourth Circuit's reasoning in *Burt v. Abel*, 585 F.2d 613 (4th Cir. 1978).

> Where the constitutional deprivation is not an official act of the municipality, a plaintiff's only recovery lies against the municipal officer in his individual capacity. While in some circumstances it may

---

12. Title 42, United States Code Section 1988, provides that, in suits under § 1983, a "court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost." *Id.*

13. *See*, McMorrow, *Legislative Abrogation of Immunities under Section 1983.* 55 Notre Dame Lawyer 139 (1979).

be difficult to determine if an alleged constitutional deprivation results from an official act of the municipality, it appears to us that a discharge from municipal employment is quite clearly an official action where, as here, the discharging body is authorized by the municipality to make such decisions.

*Id.* at 617. Finally, the 1980 Supreme Court case of *Owen*, 445 U.S. at 662, 100 S.Ct. at 1421 (1980), in a five-four decision, held that a municipality has no immunity from liability under the Civil Rights Act flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability. A municipality is also immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

■ Moreover, a local official can be sued in his official capacity as a "person" under § 1983. *See, Burt v. Abel*, 585 F.2d at 617. A reading of *Owen* reveals that there is no good faith immunity for persons in their official capacity, *see, Fracaro v. Priddy*, 514 F.Supp. 191, 198 (M.D.N.C.1981), since suits against government agents sued in their official capacity are in essence suits against the government entity of which the officer is an agent. *See, Monell*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611. Thus, damages may be awarded against Bourne and Simmons in their official capacity if those damages are available against the City of North Charleston.

■ As a result, Simmons and Bourne are entitled to raise the affirmative defense of qualified immunity only in their individual capacities. Whether they are entitled to good faith immunity in their individual capacities should be resolved by the jury since, by the pleadings and testimony, this issue is one of disputed fact. Defendants' motion for summary judgment on this issue is denied.

6. *Plaintiff's § 1985(3) Conspiracy Claims.*[14]

■ The defendants move for summary judgment on plaintiff's § 1985(3) conspiracy claim for the reasons that all acts complained of were lawful and, further, that plaintiff did not allege or show a racial or class-based discriminatory motive, nor did he allege or show membership in any class. In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court stated that a § 1985(3) complaint must allege the conspiracy's existence, its purpose to deprive a person or class of persons of equal protection of the laws, an act in furtherance of the conspiracy, and injury or deprivation of the rights of the plaintiff. *See, Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973). The language requiring intent to deprive of equal protection or equal privileges and immunities has been held to mean that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions. *Griffen*, 403 U.S. at 102. The *Griffen* court expressly declined to rule on whether § 1985(3) reaches conspiracies motivated by non-racial discriminatory intent, saying, "We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the position of § 1985(3) before us." *Id.*, n.9.

The Court of Appeals for the Fourth Circuit has also declined on several occasions to decide whether § 1985(3) proscribes conspiracies that are motivated by invidiously discriminatory intent other than racial bias. *See, Rodgers v. Tolson*, 582 F.2d 315, 317 (4th Cir. 1978); *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1333 (4th Cir. 1976); *Hughes v. Ranger Fuel Corp.*, 467 F.2d 6 (4th Cir. 1972).

In *Rodgers*, the Fourth Circuit did decide that, in order to be a victim of class-based discrimination actionable under § 1985(3), a person must be a member of a larger group that could be objectively identified. *Rodgers*, 582 F.2d at 317–18. The plaintiffs Rodgers had argued that their complaint

---

14. For the purpose of this order, the defendants' sixth and seventh grounds for summary judgment are combined into one for the purposes of analysis.

indicated that they were members of a class consisting of "those who are in political and philosophical opposition to [the town commissioners], and who are, in addition, outspoken in their criticism of the [commissioners'] political and governmental attitudes and activities." 582 F.2d at 317. Judge Butzner, speaking for the court, found that those allegations did not define a cognizable class.

> These terms describe the Rodgers' attitude toward the commissioners but do not define a larger group that could be objectively identified by an observer. It is impossible to determine who besides the Rodgers belong to this class; indeed, the Rodgers cannot identify any other members. Consequently, we conclude that the Rodgers' complaint does not allege class-based discrimination.

*Rodgers*, 582 F.2d at 318.

Similarly, Baxley does not allege nor has he shown that he is the member of any class. Rather, he simply states that he was deprived through a conspiracy of his right to counsel among other rights and does not allege that this is a part of any general pattern of discriminatory action directed to any class.

The Fourth Circuit has held in *Hughes* that "a complaint alleging purposeful discrimination towards an individual with no allegation of racial or otherwise class-based motivation is insufficient under § 1985(3)." 467 F.2d at 10. It is apparent that Baxley complains of a constitutional deprivation of his rights solely and not that of any identified class; the very kind of case the supporters of the statute, according to *Griffen*, did not intend to bring under the statute. 403 U.S. at 102. *Birnbaum v. Trussell*, 371 F.2d 692 (2d Cir. 1966), is inapposite in that Simmons and Bourne do not fall into the category of "private persons" as addressed in that case.

This court concludes that, as a matter of law, Baxley is not found to be a member of any class such that he is protected by § 1985(3). Therefore, summary judgment is granted.[15]

15. Based on this conclusion, it is not necessary to reach defendants' contention in his sixth

For the foregoing reasons, it is, therefore,

ORDERED, that defendants' motions for summary judgment on the first, fourth and fifth claims for relief should be, and the same are hereby, denied. It is

ORDERED FURTHER, that defendants' motions for summary judgment on the second, third, sixth and seventh claims for relief, should be, and the same are hereby, granted.

AND IT IS SO ORDERED.

ground that the acts complained of were lawful.