**Rosalie CLARKE**

v.

**UNITED STATES of America et al.**

**Civ. A. No. 504–71–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 6, 1972.

Gordon P. Williams, Richmond, Va., for plaintiff.

JeRoyd W. Greene, Jr., James E. Sheffield, Richmond, Va., for Richmond Community Action Program.

Harold M. Marsh, Richmond, Va., for Church Hill Model Neighborhood Pol. Board.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff herein seeks redress for an alleged deprivation of constitutional rights by virtue of an alleged improper termination of employment. Jurisdiction was initially invoked pursuant to 42 U.S.C. § 2701 and 42 U.S.C. §§ 1985,

1986, 28 U.S.C. §§ 1331 and 1343. In an amended complaint filed by leave of Court jurisdiction was invoked under The Federal Torts Claim Act, 28 U.S.C. § 2671 et seq. and 28 U.S.C. § 1346(b), as to her cause of action against the United States. Subsequently that cause of action was dismissed as to the United States and as to defendant Bowman, the Deputy Regional Director of the Office of Economic Opportunity. Additionally, the Court by order of May 26, 1972, dismissed the action as to the defendant City of Richmond, defendant Leidinger, the Assistant City Manager, and defendant Howell, the Model Neighborhood Program Director. At this juncture, the remaining defendants are the Richmond Community Action Program, Inc., and seven officers and directors thereof, and the Church Hill Model Neighborhood Policy Board, Inc., and ten directors and officers thereof.

The parties are now before the Court pursuant to a Motion to Dismiss by the Church Hill Neighborhood Policy Board and its respective officers and directors (hereinafter referred to collectively as "Policy Board"), a motion to dismiss and for summary judgment by the Richmond Community Action Program, Inc. and its officers and directors (hereinafter referred to collectively as "RCAP"), and a cross motion for summary judgment by the plaintiff. The parties have submitted memoranda and documents in support of their respective motions, and counsel herein have agreed that same are ripe for determination without oral argument. Accordingly, the Court will proceed to a determination of the issues herein upon the pleadings, memoranda and documents presently before it.

The parties have entered into stipulations of fact, which in pertinent part are as follows:

On and before September 8, 1971, plaintiff was employed as a Community Aide by the Church Hill Neighborhood Policy Board, Inc., hereinafter called Policy Board, at a salary of $84.00 per week paid by-weekly, the last of which was by check on the Richmond Community Action Program, Inc., No. 1821, dated September 4, 1970, for the period ending September 2, 1970.

The Church Hill Model Neighborhood Policy Board, Inc. is a non-profit corporate agency authorized by Congress to be funded through and was operating under rules of procedure promulgated by the Richmond Community Action Program, Inc. [which rules are in the *Manual of Personnel Policy*, hereinafter "Manual"].

In July, 1970, the plaintiff became aware of certain correspondence relating to the rental of automobiles by Mrs. Doris Davis, while serving as an Acting Director of a component unit of the Church Hill Model Neighborhood Policy Board, Inc., and for which payment was made with Federal funds. Plaintiff later learned, however, that Mrs. Davis had reimbursed the Richmond Community Action Program, Inc. for the rental of said automobiles. Upon learning of the correspondence heretofore referred to, plaintiff at a meeting of the Policy Board on July 14, 1970, reported that there had been misuse of funds on the part of Mrs. Davis. Thereafter, Mrs. Doris Davis engaged counsel, who brought an action in slander against the plaintiff in the Law and Equity Court of the City of Richmond, which said action is still pending. By letter of July 29, 1970, from defendant Bryant, the then Executive Director or Secretary of the Policy Board, plaintiff was advised of her suspension from employment. Mrs. Davis received a similar letter. Thereafter, by letter dated September 8, 1970, from defendant Bryant, plaintiff was notified that her position as a Community Aide had been terminated due to *"Personal Unsuitability."*

Upon consideration of the documents and affidavits submitted herein, the Court further finds as follows:

Prior to the July 14th meeting of the Policy Board there was dissention between the plaintiff and Mrs. Davis, which culminated in the plaintiff's July

14th accusation at the Policy Board meeting of misuse of funds. Although unclear, the apparent reason for the suspension of the plaintiff and Mrs. Davis on July 29, 1970, was to allow the parties to "solve their differences" and thus to avoid further internal staff friction. Other evidence before the Court indicates that the Policy Board was particularly and understandably sensitive to allegations of misuse of funds as a result of close federal supervision, and that the suspension of the two employees might have been designed to avoid further difficulties which would call attention to the irregularity alleged.

On September 16th, pursuant to the aforesaid Manual of Personnel policy, the plaintiff appealed her suspension. There is issue as to whether said appeal was timely filed, and accordingly whether the plaintiff was afforded administrative due process, which issues shall be discussed by the Court *infra*.

Further, the Court finds that the Policy Board, under an agreement with RCAP, was a contractor and not an agency or subdivision thereof. It was the Policy Board's function, as contractor, to provide stipulated services to the community. In turn, RCAP maintained financial records and provided funding for the services of the Policy Board. The terms and conditions incorporated into the contract for service provided certain prohibitions against discrimination, political activity and religious activity, as well as calling for financial inspections, performance and reports. A statement of agreement between RCAP and the Policy Board stipulated that RCAP would "exercise no line administrative authority over the program or staff of the Church Hill Policy Board."

## JURISDICTION

As to the plaintiff's claims against RCAP and the Policy Board, jurisdiction is founded on 28 U.S.C. § 1331.[1] The guidelines for determining federal jurisdiction under § 1331 have been established by Gully v. First National Bank, 299 U.S. 109, 112–113, 57 S.Ct. 96, 81 L.Ed. 70 (1936), and which this Court enumerated in Yelinek v. Worley, 284 F.Supp. 679 (E.D.Va.1968) as follows:

1. A right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action;

2. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another; and

3. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto.

The plaintiff avers that she was not afforded procedural due process which is mandated by guidelines of the Office of Economic Opportunity, Congressional authorization therefor, and RCAP's *Manual*. The Court finds that determination of the issues raised as to the applicability of said federal statute guidelines, regulations and provisions of the *Manual* are dispositive of the action herein and thus fall within the above recited requirements of *Gully, supra*. Further, the Court finds that the plaintiff has satisfied the "jurisdictional amount" requirement. In addition to damages in excess of $10,000, the plaintiff seeks recovery of lost wages ($8,400) and a mandatory injunction to reinstate her, the value of which injunction is measured by the value of employment thereafter. See Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir. 1970).

Having determined that the plaintiff has successfully invoked juris-

1. Although the parties have stipulated that this Court has jurisdiction, said stipulation is without binding effect on the Court, which will make its own determination. See Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

diction over the defendants herein, the Court considers the legal sufficiency of her causes of action against them. Said determination is addressed to the merits of her claims. See Bell v. Hood, 327 U. S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). For purposes of determining the issues herein, the Court must treat the plaintiff's claims as they apply separately to RCAP and the Policy Board.

## RCAP

 The Court concludes that the plaintiff has failed to state a federal cause of action for which relief can be granted against RCAP. She has, however, stated one claim which, although not a "federal question" which this Court can determine under 28 U.S.C. § 1331, should nevertheless be determined in this action for reasons discussed *infra* by virtue of pendent jurisdiction.

The Court finds that the issue of whether RCAP may be held responsible for any wrongdoing pursuant to federal regulation is dispositive of plaintiff's claim against that defendant. The Court has concluded that the federal regulations applicable hereto place on RCAP the duty to prevent its grantee agencies from committing certain specific discriminatory hiring practices. Said practices are amplified in OEO–Community Action Memorandum No. 23–A (Aug. 26, 1966), which proscribes racial discrimination in hiring, partisan political activity, acceptance of gratuities, and nepotism. The plaintiff herein has not stated a claim of racial discrimination or other violations within the above recited prohibitions. (See the memorandum of this Court dated May 12, 1972).

Title 42 U.S.C. § 2796 provides in pertinent part:

[E]ach community action agency shall adopt for itself and other agencies using funds or exercising authority for

which it is responsible, rules designed to establish specific standards governing salaries, salary increases, travel and per diem allowances, and other employee benefits; to assure that only persons capable of discharging their duties with competence and integrity are employed and that employees are promoted or advanced under impartial procedures calculated to improve agency performance and effectiveness . . .

Title 42 U.S.C. § 2796(b) empowers the Director [of OEO] to prescribe regulations therefor, pursuant to which Memorandum No. 23–A was promulgated. The aforementioned memorandum further states:

*Employee grievances.* Employee grievances shall be given prompt and fair consideration. Grantee and delegate agencies shall make provision for review of personnel actions by the governing body or a committee appointed by the governing body in any case in which there is a claim of unfair treatment or of dismissal without cause.

The Court finds that the intent of the above recited language of the statute and memorandum is to ensure that community action programs (and thus RCAP) provide its employees with orderly personnel procedures and that its grantees [2] or contractors provide said procedures to their employees. The Court does not find that RCAP is directly responsible under said language for adherence by its grantees or contractors to said procedures in their dealings with line personnel. The purpose of the aforesaid language is to ensure that *all* agencies supported by OEO funds provide the aforementioned requirements of due process, but not that RCAP be held responsible for other grantees' adherence to same.

---

2. The Court is of the opinion that the term "grantees" refers to all agencies, including Community Action Program (CAP) contractors, which receive OEO funds. This interpretation is given support by

legislative history of 42 U.S.C. § 2796 which syntactically separates CAP's and "other OEO grantees." See 1967 U.S. Code & Cong.Adm.News, at p. 2450.

Accordingly, the Court finds that the plaintiff has failed to show a duty on the part of RCAP to her under federal law. As such, she has failed to state a cause of action against RCAP over which this Court has subject matter jurisdiction and for which relief on that basis can be granted.

That, however, does not preclude plaintiff's right of redress against RCAP for the plaintiff has alleged that "whether RCAP and the RCAP defendants had a right to control or direct the Policy Board, they did in fact do so," in procuring the suspension of the plaintiff. The plaintiff has thereby stated a cause of action under common law. Although this Court, as heretofore stated, is without subject matter jurisdiction under 42 U.S.C. §§ 1985, 1986 over same, see Hughes v. Ranger Fuel Corp., 467 F.2d 6 (4th Cir. 1972), the Court does in its discretion acquire pendent jurisdiction over said matter, United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In view of the Court's determination with regard to the Policy Board defendants (*infra*), the possibility that collateral questions of exercise of power under federal regulations may arise, and the advanced stage of the action herein, the Court concludes that maintenance of pendent jurisdiction in part over the aforesaid common law claims is just and proper.

■■■■ One basis of liability alleged by the plaintiff against RCAP appears to flow from theories of agency and *respondeat superior,* i. e. any wrongdoing by the Policy Board may be imputed to RCAP. The Court, upon examination and consideration of the Terms of Agreement between RCAP and the Policy Board concludes that the Policy Board is solely responsible for its own employment practices and procedures. The language reads in part as follows:

> RCAP will exercise no line administrative authority over the program or staff of the Church Hill Model Neighborhood Policy Board, Inc. The

CHMNPB, Inc. staff will be responsible to the Church Hill Model Neighborhood Policy Board, Inc. Executive Director, who will be responsible to the Church Hill Model Neighborhood Policy Board.

Accordingly, pursuant to the above recited language and pursuant to the finding of fact that the Policy Board was a contractor and not a subdivision of RCAP, the Court concludes that the plaintiff is precluded from imputing to RCAP any wrongdoing of the Policy Board on common law theories of agency or *respondeat superior.* The plaintiff has also alleged that by reason of her suspension, RCAP and Policy Board defendants attempted to interfere with her right and access to State court process. Because the allegation of said interference deals with the integrity of State court process, the matter is better left to the State courts. This Court is therefore unwilling to exercise its discretionary jurisdiction in regard thereto. Accordingly, the plaintiff's claim as to interference with State court process shall be dismissed without prejudice for lack of subject matter jurisdiction.

### POLICY BOARD

■■■ As noted, *supra,* the Court finds that OEO–Community Action Memorandum No. 23–A mandates that RCAP and its grantees provide for review of agency actions which give rise to claims of unfair treatment or dismissal without cause. The Congress has made clear that Community Action programs and their agencies are expected to conform to rules of fair play and due process. See 42 U.S.C. § 2796. Whether pursuant to this mandate or out of need to have codified personnel procedures, the Policy Board adopted RCAP's Manual (see Stipulation # 2). The Court finds that under 42 U.S.C. § 2796 and the guidelines issued thereunder, said Manual is binding upon the Policy Board. The Court's conclusion is further supported by evidence upon oral deposition which shows that the Manual was distributed to the plaintiff upon

commencement of employment, which distribution might properly have given the plaintiff the expectation that the rules therein would govern.

The record discloses that those procedures were not followed. The pertinent provisions of the manual with regard to suspension and dismissal are as follows:

SUSPENSION:

1. *Definitions:*

Suspension is a temporary enforced absence from duty in a non-pay status.

It may be imposed:

1. as a disciplinary action.
2. pending outcome of investigation or proposed separation for cause.

A. *Suspension as a Disciplinary Action:*

Suspension under this heading is a severe disciplinary action for significant misconduct or repeated infractions of a lesser nature. It is used also for disciplinary reasons when an official reprimand has failed to achieve the desired correction of deficiencies.

B. *Suspension Pending Outcome of Investigation or Proposed Separation for Cause:*

An employee is suspended in these circumstances when the conditions are such that his retention in active duty status pending investigation or dismissal may result in damages to R–CAP property, be detrimental to the interest of R–CAP, or injurious to the advisability of assigning the employee temporarily to duties in which the aforesaid conditions would not exist or to granting a request for sick leave, if appropriate, or annual leave, provided the employee has sufficient leave to his credit to cover the required period.

2. *Notice of Proposed Suspension:*

A. *Reasons for Action:*

The written notice to the employee signed by the Executive Director is to contain a statement enumerating, simply and concisely, the reasons motivating the action. The description of incidents is to include places, dates, times and any other specifics needed to provide the employee with fair opportunity for refutation. If the charge is based on a breach of a law or regulation, insure that the notice identifies the law or regulation by appropriate citation.

B. *The Employee's Right to Reply:*

The employee is to be advised that:

a. He has the right to reply to the notice within five (5) working days from the date on which the notice of proposed suspension was received, and to submit documentation in support of his reply. The written reply including documentation is to be addressed to the Executive Director of his designee.

b. No further step is to be taken until the employee's reply has been received and considered, or, if no reply is received, until after the date specified for making reply has passed.

c. If the reply is considered by the Executive Director or his designee to be a satisfactory explanation of the charges, the notice is to be withdrawn and the records cleared.

d. If no reply is received, or if the reply is not considered adequate, the suspension action is to take place.

e. Permanent employees have the right to request an appeal on suspension. If suspension should be reversed by the Grievance Appeal Panel, the employee shall be re-instated and shall receive all back pay and fringe benefits due to him.

DISMISSAL FOR CAUSE POLICY:

A. *Definitions:*

"Dismissal for Cause" (action initiated by R–CAP), as herein referred to,

is the dismissal (discharge) of an employee on formal referral of charges of misconduct, delinquency, unsatisfactory performance of duties, malfeasance or other causes that will adversely affect the efficiency of R–CAP and its services. The following are reasons for dismissal to promote the efficiency of R–CAP and of unsatisfactory performance of duty:

a. *Misconduct:* this is a deviation from the standards of acceptable conduct of the local community. The standards of [3]

 1. give offense to the general public, the local community, R–CAP, or

 2. are specifically prohibited under R–CAP's orders or

 3. are insubordinate,

 may constitute a basis for dismissal to promote the efficiency of R–CAP.

b. *Malfeasance in the Office:* this is the misuse of Official position to accomplish an improper purpose. Any employee who violates the law through official acts, uses official authority for wrongful purposes, or commits other serious or willful offense against the law or R–CAP regulations, may be dismissed to promote the efficiency of R–CAP.

c. *Personal unsuitability:* has reference to the character, reputation and fitness of an employee for retention in R–CAP. An employee, whose personal behavior adversely affects his usefulness to R–CAP or reflects discredit on the name of R–CAP, may be dismissed to promote the efficiency of R–CAP. Such behavior may derive from emotional instability, inflexible attitudes or personal habits, normally considered socially or morally unacceptable, which may become evident after appointment.

d. *Unsatisfactory performance of duty:* this is any performance below that expected of an employee of his salary level and in the type of position, to which the employee is assigned. Normally, the deficiencies in performance will have been documented on performance evaluation reports, through withholding of periodic step increments of pay or by lesser forms of disciplinary action before dismissal for cause action is initiated.

B. *Procedures:*

The steps in the consideration of a proposed dismissal action shall be handled in the following order and manner:

1. *Initiation of Dismissal Action:*

 a. [I]n [4] which the employee is working, discusses with the Executive Director the circumstances which indicate that the employee should be dismissed and furnishes the Executive Director all the facts concerning the case, including a complete explanation of corrective action taken, if any, copies of all letters or memoranda written to the employee, which relate to the proposed action, and copies of replies received from the employee.

 b. The Executive Director of his designee reviews the facts and considers possible alternatives to dismissal, such as re-assignment, which could result in more effective utilization of the employee's services. If the circumstances are such

---

3. Exhibit "A", from which the Court is quoting, at this point contains an illegible phrase, which Counsel has informed the Court is a printing problem existing in all printed copies of the manual. Since the alleged cause of dismissal was on other grounds, and since the section is quoted only by reason of its being included under the Board's Dismissal For Cause Policy, and is illustrative of the specificity spelled out in the regulations, the Court deems it unnecessary to go outside the record in an effort to decipher the illegible phrase.

4. See note 3 *supra.*

that re-assignment or some other alternative is not feasible or appropriate, the Executive Director or his designee prepares the written notice of proposed dismissal.

2. *Notice of Proposed Dismissal:*

The notice to the employee contains a statement enumerating simply and concisely the reasons motivating the proposed action. In addition:

1. The employee is to be informed that he is allowed fifteen (15) calendar days from the date on which the notice is received to make his reply, whether written, oral or both.

2. The employee is to be informed that he may answer the charges personally and in writing to the official who signed the notice, the Executive Director or his designee.

3. The employee is to be informed that he may get in touch with the Executive Director or his designee if he desires further explanation regarding the reasons why the removal is proposed.

4. The employee is to be informed that he will remain in active duty status during the notice period, or, at his request, be granted [5]

The employee may be relieved of his duties and continued in pay status without charge to leave time for not to exceed five (5) work days, during which time he may prepare his case.

In circumstances where the employee's retention may reasonably be expected to result in damage to R–CAP property, to be seriously detrimental to R–CAP interest or to be injurious to the employee, his fellow workers, or to the general public, the notice is to specify whether the employee is to be assigned temporarily to duties in which these conditions do not exist, or to be placed on leave, with or without pay.

GRIEVANCE AND APPEALS PROCEDURE:

*Policy*: R–CAP, recognizing the importance of the individual employee to the organization and the desirability of prompt consideration and disposition of problems affecting his status and welfare, has established a procedure for the orderly hearing and equitable handling of employee grievances.

A. *Complaint procedures:*

If an employee is dissatisfied with a personnel action concerning him, or if there should be some other complaint or misunderstanding, he should present the matter orally and in writing to his immediate Supervisor. If the matter is not resolved in a manner satisfactory to him, the employee may refer it orally and in writing to the Executive Director in line of authority.

However, no Staff member will ever be deprived of the opportunity of going direct to the Executive Director about any matter. In addition, an employee may choose a representative to present his complaint unless compliance with this time limit is prevented by circumstances beyond his control, in which case a reasonable extension of time will be granted.

B. *Formal Appeal:*

1. If a grievance relating to adverse action, (that is, demotion for incompetence or misconduct, or dismissal for cause) of a permanent employee, who has successfully completed his probationary period, is not resolved through the complaint procedure, the permanent employee may make a formal appeal. The Executive Director may see fit to forward other complaints of permanent employees via the formal appeal route, but only in exceptional circumstances, such as when he personally is involved in the complaint.

5. See note 3 *supra.*

2. The formal appeal procedure is as follows:

a. Within fifteen (15) days of the receipt of a notice of decision to effect adverse action, the employee must serve on the Executive Director a notice of intent to appeal, including a detailed response to the reasons given for the adverse action. He may request a written decision from the Personnel Committee of the R–CAP Board of Directors or a hearing before this same committee.

b. The Personnel Director shall immediately set a date for the Committee meeting or hearing, as applicable, and so notify the employee.

c. The Personnel Committee shall proceed promptly to hear the appeal. The Committee shall have the power to command the appearance of any employee of R–CAP and to compel the production of key documents or other evidence in the possession of R–CAP, and shall do so at the request of either party or on its own motion.

d. The burden of proving grounds for the action taken shall rest on the Executive Director. While the rules of evidence should not be observed, and the "panel" proceedings should be considered "informal", the "panel" should confine the inquiry to the charges specified. Care should be taken to avoid the introduction of repetitive evidence.

e. Both the Executive Director and the employee may be represented by a spokeman, and cross-examination shall be permitted.

f. Persons appearing as witnesses shall not be permitted to be present or hear any other witness at the hearing.

g. A summary shall be made of all open proceedings of the appeal "panel". The summary shall be signed by the parties concerned with such exceptions as they may submit in writing, and a copy of the summary shall be furnished to the employee and a similar one, signed by the employee, shall be placed in his personnel file.

h. The employee then has five (5) days to write to the Executive Committee of the Board of Directors if he wishes this Committee to review the decision of the Personnel Committee.

Within ten (10) days the Executive Committee shall meet in closed session and notify the employee, in writing, no later than five (5) days, of their decision.

They may uphold or reverse the Grievance Committee decision. In this latter case at least three-fourths of the Board of Directors must agree. Their decision is final.

## CONCLUSION

While all the parties were aware that plaintiff's non-work status was designed to minimize and alleviate internal strife, the failure of the Policy Board to conform to the requirements of the pertinent sections having to do with suspension and dismissal as quoted from the *Manual, supra,* have resulted in a violation of plaintiff's rights.

Plaintiff not only did not receive a statement enumerating the reasons motivating suspension, but she was not given the information required by and to which she was entitled under the pertinent sections quoted supra, in order to adequately avail herself of the right to reply to the suspension notice and to ultimately appeal any adverse conclusions. Indeed, in spite of the requirements that plaintiff be given a statement enumerating the reasons for suspension as well as advice as to her right to reply to same within five (5) working days, and advice as to right of appeal as to suspension, she received a letter dated

July 29, 1970,[6] followed by one under date of September 8, 1970 advising her that as of August 21, 1970, "the position you held as Community Aide has been considered as terminated due to Personal Unsuitability."

The contention that the letters of July 29, 1970 (f. n. 4) and September 8, 1970, were sufficient to comply with the detailed regulations concerning suspension, advice of procedural rights, dismissal and appeal therefrom, is so specious as to preclude any detailed discussion by the Court.

Defendants' assertion that any appeal by plaintiff had to be filed within the time called for in the Manual and that said time should be computed from August 21, 1970, the date referred to in the letter of September 8, 1970, is of no greater viability than the contention that the letter of July 29, 1970 conformed to the detailed requirements of the pertinent regulations. Plaintiff did not receive notice of her termination until more than 15 days after the alleged happening, which under defendants' argument would preclude any appeal.

Having concluded that the Policy Board failed to adhere to the procedures called for in its regulations, it follows that the attempted procedure used to accomplish plaintiff's dismissal as of August 21, 1970, was contra to the requirements of law, hence any discussion of appeal period computation commencing as of that date would be fruitless.

Plaintiff is entitled to the procedural due process called for in the regulations. Surely if administrative agencies are precluded from by-passing their own regulations in as sensitive an area of employment as foreign service in the Department of State, see Service v. Dulles, 354 U.S. 363, 838, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), then it follows

that the agency with which we here deal may be accorded no greater latitude. Having so concluded, the sole remaining issue goes to damages, if any, to which plaintiff may be entitled. Accordingly, the matter will be set down for hearing on the issue of damages. See F.R.C.P. 56(d).

An order in conformity with this memorandum will issue.

---

6. Exhibit 1. "In view of the matter at hand, I am informing you that as of July 29, 1970, you are temporarily suspended from your position as Community Aide of the Community Staff for a period of 15 days without pay. During this time, your position will be considered filled.

"If three days after this 15 day period, which will be August 17, 1970, your differences have not been resolved your position will be considered vacant."