Edward **HUGHES** et al., Appellants,

v.

**RANGER FUEL CORPORATION, DIVISION OF PITTSTON COMPANY, a Delaware corporation, et al., Appellees.**

No. 72–1022.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1972.

Decided Sept. 26, 1972.

John L. Boettner, Jr., Charleston, W. Va., for appellants.

W. T. O'Farrell, Charleston, W. Va. (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., and Robert B. Sayre, Sayre & Sayre, Beckley, W. Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and BLATT, District Judge.

DONALD RUSSELL, Circuit Judge.

This action for both injunctive relief and for damages, arises out of an alleged assault and battery committed by

the defendants against the plaintiffs because of the latter's efforts "in turning in violators of the 1899 Refuse Act". This "1899 Refuse Act" [1] in support of which the plaintiffs contend they were engaged at the time of the assault in question, prohibits discharge or depositing of refuse in a navigable stream, and provides for a fine "not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction." [2] In connection with their possible prosecution under the Act and of "turning in violators of the 1899 Refuse Act", the plaintiffs, according to their complaint, informed the United States Army Corps of Engineers on June 21, 1971, of a landslide which "completely covered and blocked a public highway" nearby the Coal River in the vicinity of Bald Knob, West Virginia, and which the defendant Coal Company, in the person of its employees-defendants, was attempting to remove from the road by bulldozing it into Coal River. They then allege that, while endeavoring to photograph the pollution of the river by the defendants in these circumstances, the latter pelted them with rocks and otherwise assaulted them, driving them from the scene of the pollution for the purpose of preventing them from securing photographic evidence that might be used in "a matter prospectively pending before the United States Court". They sought relief against any deprivation of their civil rights or any action that would "deter them from preparing evidence and testimony relating to matters to be brought before the United States Court", and demanding actual and punitive damages on account of such deprivation. Along with their complaint, the plaintiffs filed their affidavits in support of an application for temporary injunctive relief, averring that they were in great fear on account of the single assault that occurred in June 21, 1971, and asserting that, "We feel that citizens of the United States should be protected when they are helping to enforce the law with regard to pollution and strip mining. I also feel that our civil rights were violated since we were on the public highway and at no time did we get on anyone's private property". The defendants replied with a motion for summary judgment on the ground that the complaint itself showed the District Court lacked jurisdiction. The District Court, without opinion, granted the motion and dismissed the action. This appeal challenges that dismissal.

Plaintiffs make no claim of federal jurisdiction on the basis of diversity. Citing Griffin v. Breckenridge (1971) 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d

---

1. 33 U.S.C., Section 407.

An informer, such as apparently the plaintiffs were, while entitled to share in the fine if there is a prosecution under Section 411, has no standing otherwise; the right of enforcement and prosecution under the Act is vested exclusively in the discretion of the Attorney-General (33 U.S.C., Section 412). Durning v. ITT Rayonier Incorporated (D.C.Wash.1970) 325 F.Supp. 446, 447; Bass Anglers Sportsman's Soc. v. Scholze Tannery, Inc. (D.C.Tenn.1971) 329 F. Supp. 339, 345–6, aff. 5 Cir., 447 F.2d 1304; Enquist v. Quaker Oats Company (D.C.Neb.1971) 327 F.Supp. 347, 348; United States v. Florida-Vanderbilt Develop. Corp. (D.C.Fla.1971) 326 F.Supp.

289, 290–1. In short, the right of an informer to participate in the fruits of a prosecution under the Act is dependent entirely on his ability to induce the Government to prosecute. Reuss v. Moss-American, Inc. (D.C.Wis.1971) 323 F. Supp. 848, 850. These decisions, which would deny any private right of enforcement or remedy under the Refuse Act of 1899, have been questioned in Note, Citizen Enforcement of the Refuse Act, 12 Natural Resources Journal, 298 (1972); Note, The Refuse Act and the Qui Tam Action, 46 Tulane L.Rev. 1023 (1972); and Note, Private Remedies for Pollution of Navigable Waters, 50 N.C.L. Rev. 153 (1971).

2. 33 U.S.C., Section 411.

338,[3] in which the Court held Section 1985(3) applicable to private conspiracies as well as those under color of state law, they predicate jurisdiction on that Section and Section 1342, 28 U.S.C. The defendants disputed such jurisdictional claim, asserting at the outset that Section 1985(3) is restricted in its application to actions for conspiracy for deprivation of civil rights solely when motivated by racial bias; and they emphasize there is no contention that the acts of the defendants, of which the plaintiffs complain, were racially oriented.[4] It must be conceded that *Griffin* left open whether Section 1985(3) was confined to situations involving racial bias.[5] However, most commentators would give a wider application to *Griffin* and would not confine it to cases involving strictly racial bias.[6] It is, however, unnecessary for the decision in this case to resolve this issue.

Assuming, without deciding, that Section 1985(3) is not restricted to conspiracies motivated solely by racial bias, still *Griffin* is clear to the point that such section was not "intended to apply to all tortious, conspiratorial interferences with the rights of others" nor was it to be interpreted as establishing "a general federal tort law".[7] Spe-

3. The heart of the *Griffin* decision is correctly summarized in Note, 47 Wash.L. Rev. 353, 357:

In applying 1985(3), "The *Griffin* Court abandoned the Collins v. Hardyman principle (341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253) that there can be no deprivation of equal protection of the laws without some degree of state envolvement and concluded that 'there is nothing inherent in the phrase that requires the action working the deprivation to come from the state.'"

For a possible rationale for reconciling *Collins* and *Griffin*, however, see 25 U. of Miami L.Rev. 780, at pp. 783–4 (1971).

4. Some commentators have discussed *Griffin* as merely authorizing a remedy for unlawful private racial discrimination and do not discuss it as authority for a wider application of Section 1985(3). See, for instance, Note, Federal Civil Remedy Encompassing Private Conduct in Civil Rights Violence, 46 Tulane L. Rev. 822 (1971).

5. Cf., Griffin v. Breckenridge, *supra*, 403 U.S. at p. 102, n. 9, 91 S.Ct. at p. 1798:

"We need not decide, given the facts of this case, whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3) before us."

Moreover, an extension of Section 1985 (3) beyond racially oriented conspiracies could present, it is stated by some authorities, constitutional problems, but it is not necessary to examine these, since we feel this action must fail on other grounds. See, Note, U. of Miami L.Rev. 780, 783–4, and Note, 47 Wash.L.Rev. at p. 365 (1971). In the last Note, the editors state:

"However, relief under section 1985 (3) is limited by the scope of congressional power under the Constitution."

6. See, Note, 40 Fordham Law Rev. 635, at pp. 641–2:

"It now appears that, in the light of *Griffin*, there is a new weapon to counter private racial discrimination. * * * *Griffin* will provide relief in those cases where the state courts are not receptive to civil actions, brought by a member of a racial minority. * * * The Court's reliance on the federally protected right to travel may mark a new direction in the Court's view of the extent of civil rights legislation. This decision may well open the way for action by other minorities—not necessarily racial—to remedy by civil action acts of discrimination against them as a group."

7. At p. 102, 403 U.S. See, also, Note, 25 U. of Miami L.Rev. 780, at p. 784 (1971):

"Thus, the *Griffin* decision in no manner transforms section 1985(3) into a general federal tort law. Since the Court specifically limits its decision to the factual situation at hand, the only constitutional considerations involved are those dealing with the question of whether Congress had the power to enact a statute that imposes liability under federal law 'for the conduct alleged *in this complaint*.' The Court states that 'we need not find the language of § 1985(3) now before us constitutional in all its possible applications in order to uphold its facial constitutionality and its application to the complaint *in this case*.'" (Italics in Note)

cifically, the statute did not purport to establish " 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' " [8] Accordingly, it is an essential element of any action under the statute as construed in *Griffin*, that there be in the case "the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment." [9] This requires that, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." [10] It is clear, then, that "a complaint alleging purposeful discrimination towards an individual with no allegation of racial or otherwise class-based motivation" is insufficient under Section 1985(3). [11]

■ In their complaint, the plaintiffs make no allegations of any class-based motivation on the part of the defendants. What they set forth is an aggravated assault on their person on a single occasion, the very kind of case the supporters of the statute, according to *Griffin*, did not intend to bring under the statute. The action of the defendants was directed at the plaintiffs as individuals because they were engaged in attempting to photograph them (the defendants) and their activities on that particular occasion, not because of any animus against them as members of some class or race. [12] There is no averment in the complaint that the defend-

ants attacked the plaintiffs because the latter were environmentalists, as has been suggested in this Court; the allegations of the complaint are specific that the assault was sparked solely by the instant reaction of the defendants to the fact that the plaintiffs were seeking to photograph the defendants, clearly for the purpose of prosecuting them under the Refuse Act. Theirs was a purely spontaneous act, not alleged to be a part of any general pattern of discriminatory action directed to any class, as was the situation in Action v. Gannon (8th Cir. 1971) 450 F.2d 1227. [13]

The argument that the defendants were attempting to interfere with the plaintiffs' constitutional right of travel is manifestly spurious. The complaint merely sets forth that, while they were attempting to photograph, the plaintiffs were on the public road and not on private property; it does not aver that the defendants were attempting to impede the right of the defendants to travel over the public road. That the plaintiffs were standing in the public highway at the time was purely coincidental. Nowhere in their complaint do the plaintiffs base their constitutional claim on a conspiracy generated by a class-motivated animus to deprive them of either "equal protection of the law" or "equal privileges and immunities" under the laws or the exercise of any constitutional freedom to travel but rather plant

8. At pp. 101–102, 403 U.S., 91 S.Ct. at p. 1798.

9. At p. 102, 403 U.S., 91 S.Ct. at p. 1798.

10. At p. 102, 403 U.S., 91 S.Ct. at p. 1798.

11. See, Note, 47 Wash.L.Rev. 353, 359, and at p. 365:
    "In cases arising under section 1985 (3), as in other cases where federal jurisdiction exists under a particular statute, the plaintiff must plead facts showing the basis for that jurisdiction, and it cannot be shown by mere conclusory allegations."
    To the same effect is, Place v. Shepherd (6th Cir. 1971) 446 F.2d 1239, 1244. Cf., also, Lusk v. Eastern Products Corporation (4th Cir. 1970) 427 F.2d 705, 708.

12. See, Kletschka v. Driver (2d Cir. 1969) 411 F.2d 436, 447:
    "The actions taken by defendants were directed only against plaintiff as an individual and not because he was a veteran, or a member of some class or race. A violation of equal protection would be shown if the actions against plaintiff were part of a general pattern of discrimination, or were based on impermissible considerations of race or class, but plaintiff has not raised a genuine issue of fact concerning such discrimination."

13. The conduct complained of in this case was found by the Court to be "stimulated * * * by racial and economic motives." (Italics added). 450 F.2d at p. 1232.

their constitutional deprivations on their contention that, as private law investigators, and self-appointed enforcers of the law, they could not be restricted or interfered with in their quest for evidence of federal criminal violation. It would be a mischievous doctrine, indeed, fraught with great threat to constitutional rights to invest self-anointed "informers", however commendable their purposes, with any such powers and rights as asserted by the plaintiffs, and certainly Section 1985(3) does not purport to do so.[14]

The action of the District Court in dismissing the case is affirmed.

Affirmed.

---

14. Cf., Collins v. Hardyman (1951) 341 U.S. 651, 661, 71 S.Ct. 937, 941, 95 L.Ed. 1253:
    " * * * it is clear that this statute does not attempt to reach a conspiracy to deprive one of rights, unless it is a deprivation of equality, of 'equal protection of the law', or of 'equal privileges and immunities under the law.' "