Helen H. STERN, on behalf of herself and all those similarly situated

v.

MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY

and

Herbert S. Denenberg, Insurance Commissioner of the Commonwealth of Pennsylvania.

Civ. A. No. 71–2987.

United States District Court, E. D. Pennsylvania.

Oct. 12, 1973.

Helen H. Cutner (Stern) pro se.

William H. Lowery, Philadelphia, Pa., for Mass. Indemnity.

Gerald Gornish, Deputy Atty. Gen., Harrisburg, Pa., for Herbert Denenberg.

## OPINION AND ORDER

MASTERSON, District Judge.

BACKGROUND

This action arises under Title 42 of the United States Code, Sections 1983 and 1985, and federal jurisdiction is as-serted under Title 28, Sections 1331, 1332, 1343 and 2201.

Plaintiff is a woman who applied to defendant, Massachusetts Indemnity and Life Insurance Company (hereinafter Insurance Company) for a disability insurance policy in terms available to men of her age, health, income and occupation. She avers that defendant Insurance Company refuses to sell disability insurance to women containing the same terms and conditions available to men solely on the basis of sex.[1] Plaintiff argues that this refusal is without actuarial justification and is with the agreement and approval of the Pennsylvania Insurance Commission.[2] She contends that the aforesaid discrimination is a denial of equal protection of the law and is in violation of the Constitution of the United States and of the Commonwealth and Section 626 of the Pennsylvania Insurance Company Act[3] which prohibits discrimination by casualty and disability insurance companies between individuals of the same class.

Defendant Insurance Company maintains a number of defenses in its Answer and additional defendant Denenberg also raises essentially the same defenses. These will be explored in greater detail in our Opinion.

The following motions are before us for decision; plaintiff's Motion for Confirmation of Class pursuant to Rule 23(b)(2), F.R.Civ.P.; and plaintiff's

---

1. The following allegations are made in plaintiff's Brief in Opposition to Additional Defendant's Motion to Dismiss Amended Complaint; defendant sells fourteen disability income policies to men and two to women, including two accident-only policies for men and one accident-only policy for women; defendant will not sell to a woman any disability income policy which will pay income for any period longer than 24 months on any accident or illness, but such policies are available to men under which income is payable for periods of 12 months, 36 months, 60 months, 120 months, 180 months, or to age 65; and defendant refuses to sell any policy of disability insurance to women other than "Professional Women" as defined by defendant. See also footnote 8 *infra*.

2. Under the provisions of the Pennsylvania Insurance Companies Law, 40 P.S. § 1 et seq., and specifically the provisions relating to casualty companies, 40 P.S. § 751 et seq., defendant Insurance Company is required to, and does, submit all of its forms used for casualty and disability insurance to the Pennsylvania Insurance Commission for approval of their terms and conditions prior to their use in Pennsylvania.

3. 40 P.S. § 761:
 "Discrimination between individuals of the same class in the amount of premiums or rates charged for any policy of insurance covered by this act, or in the benefits payable thereon, or in any of the terms or conditions of such policy, or in any other manner whatsoever, is prohibited."
 1921, May 17, P.L. 682, art. VI, § 626.

Motion to Dismiss [Strike] Defenses Two Through Twelve of defendant's Answer pursuant to Rule 12(h)(2), F.R. Civ.P. After the filing of these motions, we determined that the Pennsylvania Insurance Commissioner is a necessary party to this action and ordered his joinder.

Additional defendant Denenberg has moved to Dismiss Plaintiff's Amended Complaint. In response, plaintiff has filed a Cross-Motion for Partial Summary Judgment and Injunction. For the reasons set forth in our Opinion, we will partially grant and partially deny plaintiff's Motion to Dismiss Defenses and will deny all the other motions in toto.

## OPINION

### PLAINTIFF'S MOTION TO DISMISS DEFENSES TWO THROUGH TWELVE OF DEFENDANT INSURANCE COMPANY'S ANSWER.

Defendant Insurance Company contends as its Second Defense that this court lacks subject matter jurisdiction of the complaint under 28 U.S.C. §§ 1331, 1343 and 2201 because of failure to state a cause of action under 42 U.S.C. §§ 1983 or 1985. In his Motion to Dismiss Amended Complaint, additional defendant Denenberg joins in this defense.

As its Third Defense, defendant Insurance Company argues that this court lacks subject matter jurisdiction under 28 U.S.C. § 1332. Additional defendant Denenberg also joins in this de-

fense. Because Commissioner Denenberg has been joined in this action, and is a resident of the Commonwealth, diversity jurisdiction under Section 1332 is destroyed. Therefore, the defense is a valid one and plaintiff's motion to dismiss it will be denied.

Defendant Insurance Company raises as its Fourth Defense the claim that this court lacks subject matter jurisdiction under any section of the U.S. Code.

As its Fifth and Sixth Defenses, respectively, defendant Insurance Company argues that we lack subject matter jurisdiction of complaints about unlawful discrimination in insurance policies and rates and plaintiff has failed to pursue her administrative remedies under the Pennsylvania Insurance Code, 40 P. S. § 1 et seq. Additional defendant Denenberg joins in these defenses.

Defendant Insurance Company's Seventh Defense is now moot. It was a claim that plaintiff had failed to join an indispensable party, the Commissioner, under Rule 19, F.R.Civ.P.

Defendant's Eighth, Ninth, Tenth and Eleventh Defenses are essentially defenses countering plaintiff's allegations that the terms and conditions of disability insurance available to women bear no rational or reasonable relation to the risk to be assumed and that as a class women have been denied equal protection of the law.[4]

Defendant Insurance Company's Twelfth Defense is simply that the complaint fails to state a claim upon which relief can be granted. Again, additional

---

4. Defendant Insurance Company maintains that the policy issued to plaintiff differed from that offered to men "only to the extent reasonably necessary to reflect differences in underwriting risks assumed under policies issued with respect to women and under policies issued with respect to men." (Eighth Defense).

The issuance of disability insurance is regulated by Pennsylvania law which prohibits unfair discrimination between individuals of the same class. See Section 353 of the Insurance Company Law of 1921, 40 P.S. § 477a. Defendant urges that where the division of risks by classes is based upon a ra-

tional and reasonable relation to the nature of the risk, no violation of the law occurs. (Ninth Defense).

Establishment of different rates and provisions between classes, as a method of allocating a proper share of the risk assumed, is not unfair discrimination where such differences can be justified. (Tenth Defense).

Defendant Insurance Company further maintains that authorization and regulation by the Commonwealth and the Insurance Commissioner of the terms and conditions of insurance coverage by classes of risks does not deprive women of the right to obtain such coverage. (Eleventh Defense).

defendant Denenberg concurs in this defense.

■ We are disposed at this time to deny plaintiff's motion to dismiss Defenses Eight through Eleven, inclusively, as these defenses involve factual issues better left for determination at trial on the merits. Corresponding defenses of additional defendant Denenberg will be disposed of in the same manner.

Remaining to be decided, then, are defendant Insurance Company's jurisdictional defenses (Second, Fourth, Fifth and Sixth Defenses) and additional defendant Denenberg's request that we abstain from further proceedings in this case until the Supreme Court of Pennsylvania interprets a recently passed amendment to the Pennsylvania Constitution, Article I, § 27,[5] P.S. and Section 626 of the Pennsylvania Insurance Companies Law, 40 P.S. § 761.[6]

It is argued by both defendants that we lack jurisdiction in this matter because plaintiff has failed to show that anyone acted under color of state law. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[7]

We must first determine whether the allegations of the Complaint sufficiently set forth the requirement of "state action." Plaintiff has alleged that defendant Insurance Company is licensed under the laws of Pennsylvania (Paragraph 7), and that it is extensively regulated by the Pennsylvania Insurance Commissioner pursuant to state law (Paragraph 8). It is further alleged that defendant's discrimination against women is performed with the authority of the Pennsylvania Insurance Commissioner (Paragraph 12). The state insurance department must first approve the terms, conditions and premium rates to be used by defendant insurance company (Answer to Interrogatory 2) and defendant may not utilize any form of policy which is disapproved (Answer to Interrogatory 8).[8]

■ With respect to officers or employees of a State or Territory, their actions will be deemed to be under color of law if the alleged deprivation of right is committed in fulfillment of tasks assigned to them. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Moreover, if the officer or employee is clothed with the authority of the State and purportedly acts pursuant to that authority, such action is under color of state law "whether or not the conduct complained of was authorized or, indeed, even if it was proscribed by state law." Marshall v. Sawyer, 301 F.2d 639, 646 (9th Cir. 1962). Consequently, even if the Commissioner's actions in this case could be interpreted as in contravention of Section 626 of the Pennsylvania Insurance Companies Law or of Article I, § 27 of the Pennsylvania Constitution, these actions may still fall within the proscriptions of Section 1983.

In support of his contention that there is no state action in the instant case, de-

---

5. "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."
 Adopted May 18, 1971.

6. See note 3, *supra.*

7. 17 Stat. 13.

8. Among the policies approved are: Overhead Expense Policy available to both men and women, but with premium rates for women 50 percent higher than for men (Form 240(70)); Two Year Accident Policy for Professional Women (Form 233(70)) with premiums higher than Lifetime Accident Policy for Men (Form 227(70)); 24 Month Disability Income Policy for Professional Women (Form 204(70)) with premiums higher than 180 Month Disability Income Policy for Men (Form 247(69)).

fendant Denenberg urges that we follow the Supreme Court's holding in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). In *Irvis* the appellee was refused service at a private club's dining room solely because of his race. Appellee argued that because the Pennsylvania Liquor Control Board issued appellant a private club liquor license, such involvement amounted to state action. In rejecting the appellee's contention the Court noted the lack of a symbiotic relationship between the State and the private entity and concluded that a finding of state action would emasculate "the essential dichotomy between discriminatory action by the State, which is prohibited by the Equal Protection Clause, and private conduct, 'however discriminatory or wrongful,' against which that clause 'erects no shield.'" 407 U.S. at 172, 92 S.Ct. at 1971. See also Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); and The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

■ The holding in *Irvis* does not apply to the facts of this case. In *Irvis* it was found that the Pennsylvania Liquor Control Board played no part in establishing or enforcing the membership or guest policies of the private club and neither approved or endorsed the club's racially discriminatory practices. But here the involvement of the State is unequivocal. Not only does the State license insurance companies desiring to sell policies in Pennsylvania, it also approves such policies and classifications of risks before they can be used. No insurance company is permitted to sell any policy in the State until it has been approved by the state insurance department pursuant to authority granted by the Commonwealth. Such pervasive control by the Commonwealth establishes its intimate involvement in the alleged discriminatory conduct of defendant Insurance Company.

Defendant Insurance Company also maintains that plaintiff has failed to satisfy the color of state law requirement of Section 1983. Defendant claims that the wrongdoer must be clothed with the authority of state law, but this requirement has rarely been satisfied in cases involving someone other than a state official. Moreover, defendant asserts that the majority of cases involving satisfaction of the state law requirement, where private discriminatory conduct was extant, were cases arising from racial discrimination. Defendant relies on Bright v. Isenbarger, 314 F.Supp. 1382, 1392–1394 (N.D.Ind.1970), aff'd, 445 F.2d 412 (7th Cir. 1971):

> "Almost all applications of the Fourteenth Amendment to private conduct based upon a finding of 'state action' have involved an attack upon 'private' racial discrimination.
>
> \* \* \* \* \* \*
>
> Although no court has held that a different (less demanding) standard of what constitutes 'sufficient' state involvement is applicable where there are allegations of racial discrimination, the fact that only a handful of the successful 'state action' cases have not involved challenges to racial discrimination and the considerations of diversity and pluralism suggest this possibility."

■ Defendant Insurance Company's contentions are unpersuasive. In determining whether a private person's conduct falls within Section 1983, the issue is "whether under all the facts and circumstances the action fairly can be said to be that of a State instrumentality acting under color of State law." Anderson v. Moses, 185 F.Supp. 727, 733 (S.D.N.Y.1960). We must examine the nexus between the State and the alleged private discriminatory conduct.

In *Isenbarger* the court found that the State was not so significantly involved in the affairs of the private entity that the challenged conduct could be deemed state action. In that case the defendant,

a private Catholic high school, did not have to be licensed by the State in order to operate and the State in no way participated in, or approved or disapproved, the actions taken by the school. In the instant case, however, defendant Insurance Company is subject to extensive regulation under the Pennsylvania Insurance Companies Law and cannot conduct business within the Commonwealth without first submitting all of its insurance forms to the Pennsylvania Insurance Commissioner for approval. See 40 P.S. § 751 et seq.

The facts in this case are not unlike those in Seidenberg v. McSorleys' Old Ale House, Inc., 308 F.Supp. 1253 (S.D. N.Y.1969). In *Seidenberg* plaintiffs sought to enjoin defendant operators of a bar from continuing its 114-year practice of serving only men. The fact that the tavern could not sell alcoholic beverages or operate without a license from the State persuaded the District Court that the private entity was really an instrumentality of the State, subject to governmental regulation and charged by the law with certain duties to the public which supervises its performance. See the concurring opinions of Mr. Justice Douglas in Lombard v. Louisiana, 373 U.S. 267, 280–283, 83 S.Ct. 1122, 10 L. Ed.2d 338 (1963), and Garner v. Louisiana, 368 U.S. 157, 182–185, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961).

■ Defendant Insurance Company cannot argue, then, that because it is not a state official, plaintiff has failed to show state action. Judge Hubert Will observed in Holmes v. Silver Cross Hospital of Joliet, Illinois, 340 F.Supp. 125, 132–133 (N.D.Ill., E.D.1972):

"[C]ourts have concluded that when the private party is licensed by the state as well as being subjected to pervasive regulations concerning its operations, the actions of that private party are state actions so far as the Fourteenth Amendment is concerned and under color of state law so far as 42 U.S.C. § 1983 is concerned."

In light of the pervasive regulatory scheme extant here, we find that the allegations of the Complaint sufficiently set forth the requirement of state action. Moreover, defendant's contention that the majority of cases of this type have involved *racial* discrimination is without merit for the purpose of the state action requirement. That contention may have relevance only with respect to whether or not plaintiff has shown deprivation of a constitutional right.

To be entitled to relief under Section 1983 plaintiff must show not only that the defendants were acting under color of law, but also that the defendants deprived her of a right secured by the Constitution and laws. Having found the defendant Insurance Company to be an instrumentality of the State for purposes of the Fourteenth Amendment, we must determine whether a sex-based classification used in fixing terms and rates of disability insurance is impermissible within the meaning of equal protection and, consequently, amounts to a deprivation of a right secured by the Constitution. In making our determination, we will regard the actions of the Commonwealth's Insurance Commission in reviewing and approving the rates and terms of disability coverage submitted to it as State regulations having the same force and effect as statutory legislation.

■ At the outset we hold that a state statute or regulation which grants benefits or privileges to men and not to women is *prima facie* unconstitutional as a violation of equal protection of the law unless the state can show a compelling interest to justify the classification.

■ In testing the validity of the classification, two standards of review have been available to the courts. Under either standard, however, we would have to hear evidence on the issue of actuarial justification. The first, restrained review, is the less stringent test. Under this standard of review, a

classification will be deemed valid if it is rationally related to a legitimate governmental objective. Shapiro v. Thompson, 394 U.S. 618, 658, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (Harlan, J., dissenting); McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Morey v. Doud, 354 U.S. 457, 464–465, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1947). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 366 U.S. at 426, 81 S.Ct. at 1105.

In the past, courts have upheld sex-based classifications on the assumption that the underlying legislative purpose of the classification was the physical[9] and moral[10] protection of women or the preservation of the family unit[11] and that this governmental objective was not only rational and reasonable, but justified by evident inequalities of educational opportunity and physical stature.

Under the reasonableness test the court need only ask itself whether the legislation has any permissible purpose and "whether the classification drawn in a statute are reasonable in light of its purpose." McLaughlin v. Florida, 379 U.S. 184, 191, 85 S.Ct. 283, 288, 13 L. Ed.2d 222 (1964). See also Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).[12]

Plaintiff argues that a more stringent standard of review should be applied here. Active review is used where the classification is termed suspect, Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944), or where it impinges on fundamental rights. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Such classifications are invalid unless it is shown that the challenged statute promotes a "compelling governmental interest." See, e. g., Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

While we perceive no fundamental right to insurance coverage in the abstract,[13] we do note a recent trend of

9. Laws prohibiting women from engaging in certain professional sports, such as boxing and wrestling, or regulating conditions of employment in certain occupations, have been upheld on the ground that legislation designed for women as a class is justified. See, e. g., Muller v. Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908); State v. Hunter, 208 Or. 282, 300 P.2d 455 (1956). The same rationale has been employed in upholding weight lifting restrictions.

10. See, e. g., Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948).

11. "Man is, or should be, woman's protector and defender. The natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of civil life. The constitution of the family organization, which is founded in the divine ordinance, as well as in the nature of things, indicates the domestic sphere as that which properly belongs to the domain and functions of womanhood. The harmony, not to say identity, of interests and views which belong, or should belong to the family institution is repugnant to the idea of a woman adopting a distinct and independent career from that of her husband. . . .

" . . . The paramount destiny and mission of woman are to fulfil the noble and benign offices of wife and mother. This is the law of the creator." Bradwell v. Illinois, 83 U.S. [16 Wall.] 130, 141, 21 L.Ed. 442 (1873) (Bradley, J., concurring).

12. Defendants claim that the differences in the policies are entirely reasonable in light of existing actuarial data. They argue that sex has always been deemed a relevant basis of classification in the insurance field where backed by statistical support. Bartelson, *Health Insurance Through Individual Policies* 138. Moreover, classification by sex is not confined only to disability insurance, but serves as a basis for life and automobile rates as well. We are informed that the differences in rates are an accurate reflection of mortality tables presently in use. But see Note, *Sex Discrimination and Sex-Based Mortality Tables*, 53 B.U.L.Rev. 657 (1973), in which it is asserted that actuarial logic may not comport with the requirements of the law.

13. Plaintiff contends that fundamental interests are affected by the sex-based classification drawn in the approved policies. Women are denied equal access to disability insur-

cases invalidating statutes or regulations based on sex classifications where not supported by a valid governmental interest. See Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Sail'er Inn v. Kirby, 5 Cal.3d 1, 95 Cal. Rptr. 329, 485 P.2d 529 (1971); Kirstein v. Rector and Visitors of the University of Virginia, 309 F.Supp. 184 (E.D.Va.1970); United States ex rel. Robinson v. York, 281 F.Supp. 8 (D. Conn.1968). See also cases cited in Note, Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv.L.Rev. 1499 (1971).

The case law is not clear, however, with respect to whether or not sex is a suspect classification like race, nationality and alienage. See, e. g., Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 53 (1971); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Some lower court rulings and commentators [14] suggest that sex should be considered a suspect classification capable of triggering active judicial review thereby placing a heavy burden on the state to relate the distinction to a compelling governmental interest.

In a case involving racially discriminatory hiring practices, the District Court of Massachusetts maintained that:

"Whenever state action is creative of a classification among its citizens such that burdens or benefits flow un-

equally, that classification is constitutionally suspect." Arrington v. Massachusetts Bay Transportation Authority, 306 F.Supp. 1355, 1358 (D. Mass.1969).

Other courts have applied this principle to sex-based classifications. In United States ex rel. Robinson v. York, 281 F. Supp. 8, 14 (D.Conn.1968), the court suggested that the equal protection rights of women should be tested by a more rigid standard than that of restrained review and reasoned that sex should be afforded no less protection than race.[15] The Supreme Court of California held in Sail'er Inn, Inc. v. Kirby, 95 Cal.Rptr. 329, 339, 485 P.2d 529, 539 (1971), that "classifications based upon sex should be treated as suspect".

The Supreme Court of the United States has until recently used traditional equal protection analysis in testing legislative classifications based on sex. See, e. g., Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).[16] The *Reed* decision, however, was interpreted by Mr. Justice Brennan in Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), as providing implicit support for the contention that sex should be treated as inherently suspect. 411 U.S. at 682, 93 S.Ct. 1764. *Frontiero* is the first Supreme Court case to mandate a stricter standard of review in testing sex-based classifications.

"Moreover, since sex, like race and national origin, is an immutable characteristic determined solely by the acci-

---

ance which tends to have an adverse impact on their economic status. The inability to acquire such insurance or adequate coverage at reasonable rates places an unfair financial burden on women as a class.

14. E. g., Note, Sex Discrimination and Equal Protection: Do We Need a Constitutional Amendment?, 84 Harv.L.Rev. 1499, 1507–08 (1971); Casenote, 1972 Wisc.L.Rev. 626, 632–33.

15. "While the Supreme Court has not explicitly determined whether equal protection rights of women should be tested by this rigid standard, it is difficult to find any

reason why adult women, as one of the specific groups that compose humanity, should have a lesser measure of protection than a racial group." 281 F.Supp. at 14. See Healy v. Edwards, 363 F.Supp. 1110 (D. La.E.D.1973), declaring Louisiana Constitution's exemption of women from jury service violative of equal protection and due process.

16. In *Reed*, for example, the Court declared unconstitutional an Idaho statute which provided for mandatory preference of males over females in appointment as administrator of an estate when the applicants are otherwise equally qualified.

dent of birth, the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate 'the basic concept of our system that legal burdens should bear some relationship to individual responsibility . . .' [Case citation omitted]. And what differentiates sex from such nonsuspect statutes as intelligence or physical disability, and aligns it with the recognized suspect criteria, is that the sex characteristic frequently bears no relation to ability to perform or contribute to society. [Footnote omitted]. As a result, statutory distinctions between the sexes often have the effect of invidiously relegating the entire class of females to inferior legal status without regard to the actual capabilities of its individual members." 411 U.S. at 686–687, 93 S.Ct. at 1770.

■ While we are aware that the suspect classification view was not shared by Mr. Justice Powell, the Chief Justice or Mr. Justice Blackmun,[17] who concurred in the result, we are inclined to agree that sex is a suspect classification which must be subjected to close judicial scrutiny.

Although it would be premature at this time to determine the actuarial validity of the defendants' policies, we are sensitive to the apparent problems women encounter in getting and keeping adequate insurance coverage.[18] The defendants will be compelled to show far more than mere convenience, simplicity or ef-

ficiency as a justification for the sex-based classification.

■ Accordingly, we find that plaintiff has stated a cause of action under 42 U.S.C. § 1983. We also find that plaintiff has stated a cause of action under 42 U.S.C. § 1985(3):

"If two or more persons in any State or Territory conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages . . . ."[19]

Defendant Insurance Company contends that because plaintiff has not alleged racial discrimination, she fails to state a claim under Section 1985(3). Defendant directs us to Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), in which the Supreme Court abrogated the principle enunciated in Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), that there must be some degree of state involvement in order to maintain an action grounded upon deprivation of equal protection.

Defendant maintains that Griffin merely authorizes a remedy for unlawful private racial discrimination and that sex discrimination does not fall within the ambit of Section 1985(3). The view that this statute is narrowly directed at conspiratorial violations of equal protection based on race and is not co-expansive with the Constitution is shared by

---

17. Mr. Justice Powell, writing for three of the concurring Justices, argued that Reed did not add sex to the limited list of classifications which are presently regarded as suspect. He also stated that the Equal Rights Amendment, which will resolve the question whether sex is a suspect classification, is now before the state legislatures for debate and ratification and that premature judicial decision pre-empts this prescribed constitutional process.

Mr. Justice Brennan was joined by Mr. Justice Douglas, Mr. Justice White and Mr. Justice Marshall in the view that sex-based classifications are inherently suspect.

18. Apparently Commissioner Denenberg is also sensitive to these problems. In a news release, dated June 20, 1973, he announced the formation of an Advisory Task Force on Women's Insurance Problems to help deal with complaints voiced by women about discriminatory insurance coverage.

Testifying before the Congressional Joint Economic Committee on Women's Access to Credit and Insurance, Denenberg stated that "[t]he coverage offered women is often inadequate, the premiums charged are often exorbitant . . . ."

19. 17 Stat. 13.

some commentators.[20] But a close analysis of *Griffin* indicates that the Supreme Court left open the question whether Section 1985(3) is confined only to racial discrimination. 403 U.S. at 102 n. 9, 91 S.Ct. 1790.[21] See also, Hughes v. Ranger Fuel Corp., 467 F.2d 6, 9 (4th Cir. 1972). Indeed, *Griffin* "may well open the way for action by other minorities—not necessarily racial —to remedy by civil action acts of discrimination as a group." Casenote, 40 Fordham L.Rev. at 642.

It is clear that Section 1985(3) was not "intended to apply to all tortious, conspiratorial interferences with the rights of others," 403 U.S. at 101, 91 S. Ct. at 1798, and constitutional impediments "would lie in the path of interpreting [the statute] as a general federal tort law." 403 U.S. at 102, 91 S.Ct. at 1798. As an essential element of a cause of action under Section 1985(3), *Griffin* provided that "there must be some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action." Id. (Emphasis added). This language would foreclose a complaint under 1985(3) which alleges discrimination against an individual, but contains no allegation of racial or class-based motivation. See Hughes v. Ranger Fuel Corp.,

467 F.2d 6 (4th Cir. 1972); Action v. Gannon, 450 F.2d 1227 (8th Cir. 1971); and Kletschka v. Driver, 411 F.2d 436 (2nd Cir. 1969). See also Casenote, 47 Wash.L.Rev. 353, 359 (1971). It does not appear that this language forecloses complaints that allege a class-based motivation which is nonracial. In the instant case plaintiff has alleged a class-based (sex), invidiously discriminatory animus behind the defendants' actions. Consequently, plaintiff may maintain a cause of action under Section 1985(3) and we will grant plaintiff's motion as to defendants' Second, Fourth and Twelfth Defenses.

Defendant Insurance Company's Fifth and Sixth Defenses are, respectively, that we lack jurisdiction because the Pennsylvania Insurance Commissioner has primary jurisdiction and because plaintiff has failed to pursue or exhaust her administrative remedies. Commissioner Denenberg joins in these defenses and urges that we abstain on the ground that Count II of the Amended Complaint seeks to have interpreted a recently passed amendment to the Pennsylvania Constitution, Art. I, § 27, and Section 626 of the Pennsylvania Insurance Companies Law, 40 P.S. § 761, neither of which have been interpreted by the Commonwealth's highest court.[21a]

---

20. See, e. g., Note, Federal Civil Remedy Encompassing Private Conduct in Civil Rights Violence, 46 Tulane L.Rev. 822 (1971). Cf., Casenote, 40 Fordham L.Rev. 635, 642 (1972).

21. There is some doubt whether the proponents of the legislation chose to limit the statute only to racial discrimination. The comments of Representatives Shellabarger, the House sponsor, and Willard, the draftsman of the limiting amendment, are not helpful. See 403 U.S. at 100–101, 91 S.Ct. 1790.

Senator Edmunds indicated, however, that Section 1985(3) might reach nonracial, class-based discriminations:

"[I]f . . . it should appear that this conspiracy was formed against this man because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, (which is a pretty painful instance I have in mind in the State of Florida within a few days where a man

lost his life for that reason,) then this section could reach it." Cong. Globe, 42d Cong., 1st Sess., 567 (1871).

Senator Edmunds' comments do not foreclose an action arising from a sex-based classification nor do they suggest that such an action could be maintained under the statute.

21a. There is now an interpretation of Article I, Section 27 by the Commonwealth's intermediate appellate court which comports with the conclusions set forth in this Opinion.

The Superior Court of Pennsylvania has recently held that a state law permitting a wife, but not a husband, to get divorce from bed and board, alimony pendente lite, and counsel fees and costs violates Article I, Section 27 of the Pennsylvania Constitution. "The Pennsylvania Equal Rights Amendment requires a repudiation of the sex of the individual 'as a permissible criteria for determining legal rights in Pennsylvania.'" Wiegand v. Wiegand, Pa.Super., 310 A.2d 426 (1973).

Defendant argues that plaintiff has failed to pursue the administrative remedies which are available to her. Under Section 353, 40 P.S. § 477a, the Insurance Commissioner is empowered, upon a showing of unfair discrimination between individuals of the same class, to suspend or revoke the license of the offending company, refuse to issue a new license to said company for a period not to exceed one year and impose a penalty of not more than five hundred ($500) dollars for each violation. This remedy is somewhat illusory in light of the Insurance Commissioner's alleged approval of the sex-based classifications contained in the rates and terms of policies submitted to him. Moreover, any administrative remedies the plaintiff has, either through the Bureau of Policyholders Services and Protection or the Pennsylvania Administrative Agency Law, 71 P.S. § 1710.41, do not have to be exhausted.

It is well settled that where a plaintiff states a good cause of action under 42 U.S.C. § 1983, administrative remedies do not have to be exhausted. See Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973); Houghton v. Shafer, 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U. S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 180–183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Defendants urge that this case is suitable for application of the Abstention Doctrine. We disagree. "The power to abstain is one residing in the sound discretion of the court." Spencer v. Kugler, 326 F.Supp. 1235, 1238 (D.N.J.1971). In actions brought under the Civil Rights Act, however, our power to abstain is narrowly circumscribed:

"At least in actions under the Civil Rights Act the power of a federal court to abstain from hearing and de-

ciding the merits of claims properly brought before it is a closely restricted one which may be invoked only in a narrowly limited set of 'special circumstances.' Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); cf. Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 188–189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). In enacting the predecessor to § 1983 Congress early established the federal courts as the primary forum for the vindication of federal rights, and imposed a duty upon them to give 'due respect' to a suitor's choice of that forum. [Citations omitted]. As a consequence it is now widely recognized that 'cases involving vital questions of civil rights are the least likely candidates for abstention.' [Citations omitted]." Holmes v. New York City Housing Authority, 398 F. 2d 262, 265–266 (2nd Cir. 1968).

See also, McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963). The instant case involves vital questions of civil rights and this forum is a suitable one for their resolution. We perceive no disruption of state administrative processes nor friction with state policies or abuse of federal judicial discretion in determining the merits of this case. Accordingly, we will grant plaintiff's motion to strike defendant Insurance Company's Fifth and Sixth Defenses and will deny defendant Insurance Commissioner's request to abstain.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER RULE 56 AND MOTION FOR INJUNCTION

Plaintiff moves this court for an order granting Partial Summary Judgment as to her action for refusal to make available to women the same policies of disability insurance which are made available to men. In support of her motion, plaintiff has submitted the admissions, answers to interrogatories and documents filed by the original defendant in this action, together with the

statements made by additional defendant in his memorandum. She avers that there is no genuine issue as to any of the following material facts: (1) defendant Insurance Company refuses to make available to any woman the policies of disability insurance which said defendant makes available to men; (2) defendant Insurance Company refuses to sell any policy of disability insurance to some women in occupations the equivalent of those in which it will insure men; (3) the foregoing refusal is based solely on sex; (4) and this refusal is acted upon with the approval of and under the authority of, additional defendant Denenberg, acting pursuant to statutory power granted by the Commonwealth. Plaintiff asserts that the only issues of material fact relate to whether the rates, terms and premiums for such policies as are made available to women are unlawfully discriminatory and to what damages has been suffered by plaintiff and the class she purports to represent.

In its answer and affidavit in opposition to plaintiff's motion, defendant Insurance Company maintains that it does make available to women policies of disability insurance, but on different terms and conditions than it makes available to men. Actuarial justification is given as the reason for the disparity. Defendant Insurance Company asserts, moreover, that it makes policies of disability insurance available to women in substantially all of the same occupations as men, except in those occupations for which there has been no demand for insurance. It is maintained that the differences in policies are based on extensive actuarial data.

 A motion for summary judgment must be denied if, from the affidavits or other evidence filed in support of or in opposition to the motion, any material fact is placed in issue. The pivotal factual question in this case is whether there is a compelling justification to support the defendants' establishment of different policy terms, conditions and rates bases on sex. Defendants have asserted actuarial justification. Plaintiff challenges this assertion. Moreover, the plaintiff's claim that defendant refuses to sell policies to women is disputed. Consequently we will deny, without prejudice, plaintiff's Motion for Partial Summary Judgment.

 We will also deny plaintiff's motion for an injunction to enjoin defendant's refusal to sell disability insurance policies to women. We are not persuaded that irreparable injury is clear and imminent to either plaintiff or the class she represents.

## PLAINTIFF'S MOTION FOR CONFIRMATION OF CLASS PURSUANT TO RULE 23(b)(2).

Plaintiff moves this court for an order that this action be maintained as a class action on behalf of all women in the Commonwealth of Pennsylvania pursuant to Rule 23(b)(2), F.R.Civ.P., in that defendants have acted, or refused to act, on grounds generally applicable to the class. She further moves for an order that this action be maintained as a class action, pursuant to Rule 23(b)(3), F.R.Civ.P., on behalf of all women in the Commonwealth who desire to purchase disability insurance on terms and conditions available to men of like status and who have been damaged by defendant's refusal, on the basis of sex, to make such insurance available to them. Plaintiff urges that we certify the 23(b)(2) class action and reserve consideration of the 23(b)(3) class questions until after the right of the class to declaratory and injunctive relief has been finally determined.

Defendant submits that plaintiff has not satisfied the requirements of Rule 23(a), 23(b)(2), or 23(b)(3). The class action issue has been extensively briefed by the litigants and we will not repeat in this opinion the arguments counsel have made on behalf of and in opposition to confirmation of the class.

 We will deny plaintiff's motion because it is probable that she would encounter considerable difficulty in ade-

quately representing a class which has potentially millions of members.[22] Rule 23 vests broad discretion in the district court when dealing with class actions. Although the court should generally resolve all doubts in favor of allowing the class, Katz v. Carte Blanche Corp., (3rd Cir. filed May 22, 1973), we are persuaded that a class action would not be a superior method for the efficient adjudication of the issues raised herein due to the difficulties likely to be encountered in the management of such an action. Consequently, we will deny plaintiff's motion and permit her to proceed alone.

22. Plaintiff's brief contains census figures supportive of the argument that joinder of all potential class members would be impractical. According to those figures, there were 5,588,647 females residing in the Commonwealth in 1970. Nationally the percentage of females over 21 is 62 percent, which in the Commonwealth would be 3,465,000 women. With respect to women employed in professional, technical or managerial capacities who might desire disability insurance, the percentage of females in such occupations nationally is 4 percent, or 223,500 women in the Commonwealth.